# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | **Case Nos. 11-33913 and 11-33912** |
| | § | |
| **LINDEN PONDS, INC. and** | § | **Chapter 11** |
| **HINGHAM CAMPUS, LLC** | § | |
| | § | **Joint Administration Pending** |
| Debtors. | § | |

## DEBTORS' JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Vincent P. Slusher, State Bar No. 00785480
vince.slusher@dlapiper.com
DLA PIPER LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 743-4572
Facsimile: (972) 813-6267

and

Thomas R. Califano, NY Bar No. 2286144
thomas.califano@dlapiper.com
George B. South III, NY Bar No. 2446771
george.south@dlapiper.com
Jeremy R. Johnson, NY Bar No. 4307617
jeremy.johnson@dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501


Dated: June 14, 2010

J. Mark Chevallier, State Bar No. 04189170
mchevallier@mcslaw.com
James G. Rea, State Bar No. 24051234
jrea@mcslaw.com
McGUIRE, CRADDOCK & STROTHER, P.C.
3550 Lincoln Plaza
500 N. Akard St.
Dallas, Texas 75201
Telephone: (214) 954-6800
Facsimile: (214) 954-6850

and

Martin T. Fletcher, MD Bar No. 07608
mfletcher@wtplaw.com
Stephen F. Fruin, MD Bar No. 08456
sfruin@wtplaw.com
Thomas J. Francella, Jr., DE Bar No 3835
tfrancella@wtplaw.com
WHITEFORD, TAYLOR AND PRESTON, L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202
Telephone: (410) 347-8700
Facsimile: (410) 752-7092

# TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| Section 1. | | DEFINITIONS AND INTERPRETATION | 1 |
| | A. | Definitions | 1 |
| | | 1.1 | 2007 Bonds | 1 |
| | | 1.2 | 2007 Bond Documents | 1 |
| | | 1.3 | 2007 Bond Indenture | 1 |
| | | 1.4 | 2007 Bond Trustee | 1 |
| | | 1.5 | 2007 Letter of Credit Agreement | 1 |
| | | 1.6 | 2007 Loan Agreement | 1 |
| | | 1.7 | 2007 Mortgage | 1 |
| | | 1.8 | 2011 Bond Documents | 1 |
| | | 1.9 | 2011 Bonds | 1 |
| | | 1.10 | 2011 Bond Indenture | 1 |
| | | 1.11 | 2011 Bond Trustee | 2 |
| | | 1.12 | 2011 Letter of Credit Agreement | 2 |
| | | 1.13 | 2011 Loan Agreement | 2 |
| | | 1.14 | 2011 Mortgage | 2 |
| | | 1.15 | Accrued Professional Compensation | 2 |
| | | 1.16 | Administrative Claim | 2 |
| | | 1.17 | Allowed | 2 |
| | | 1.18 | Amended Series 2007 B Bonds | 3 |
| | | 1.19 | Amended Series 2007 B Percentage | 3 |
| | | 1.20 | Assets | 3 |
| | | 1.21 | Avoidance and Other Actions | 3 |
| | | 1.22 | Bank | 3 |
| | | 1.23 | Bankruptcy Code | 3 |
| | | 1.24 | Bankruptcy Court | 3 |
| | | 1.25 | Bankruptcy Rules | 3 |
| | | 1.26 | Business Day | 4 |
| | | 1.27 | Cash | 4 |
| | | 1.28 | Cash Collateral Order | 4 |
| | | 1.29 | Causes of Action | 4 |
| | | 1.30 | Chapter 11 | 4 |
| | | 1.31 | Chapter 11 Cases | 4 |
| | | 1.32 | Claim | 4 |
| | | 1.33 | Class | 4 |
| | | 1.34 | Commercial Tort Claims | 4 |
| | | 1.35 | Committee or Committees | 4 |
| | | 1.36 | Community Loan | 4 |
| | | 1.37 | Confirmation Date | 5 |
| | | 1.38 | Confirmation Hearing | 5 |
| | | 1.39 | Confirmation Order | 5 |
| | | 1.40 | Consenting Holders | 5 |
| | | 1.41 | Corporate Governance Documents | 5 |
| | | 1.42 | Creditor | 5 |
| | | 1.44 | Current Management Agreement | 5 |
| | | 1.45 | Debtors | 5 |

# TABLE OF CONTENTS
### (continued)

**Page**

| | | |
|---|---|---|
| 1.46 | DIP Claims | 5 |
| 1.47 | DIP Facility | 5 |
| 1.48 | DIP Lender | 5 |
| 1.49 | DIP Loan Agreement | 5 |
| 1.50 | Disallowed Claim | 5 |
| 1.51 | Disbursing Agent | 6 |
| 1.52 | Disclosure Statement | 6 |
| 1.53 | Disputed | 6 |
| 1.54 | Distribution Date | 6 |
| 1.55 | Distribution Notice | 6 |
| 1.56 | Distribution Record Date | 6 |
| 1.57 | DTC | 6 |
| 1.58 | Effective Date | 6 |
| 1.59 | Estates | 6 |
| 1.60 | Exculpated Claim | 6 |
| 1.61 | Exculpated Party | 7 |
| 1.62 | Executory Contract | 7 |
| 1.63 | Exit Facility | 7 |
| 1.64 | Facility | 7 |
| 1.65 | Facility Site | 7 |
| 1.66 | Final Order | 7 |
| 1.67 | Hingham | 7 |
| 1.68 | Hingham General Unsecured Claim | 7 |
| 1.69 | IED | 7 |
| 1.70 | Insurance Policies | 8 |
| 1.71 | Interest | 8 |
| 1.72 | Issuer | 8 |
| 1.73 | L/C Draw Claims | 8 |
| 1.74 | Lien | 8 |
| 1.75 | Linden Ponds | 8 |
| 1.76 | Linden Ponds General Unsecured Claim | 8 |
| 1.77 | Manager | 8 |
| 1.78 | Manager Claims | 8 |
| 1.79 | Master Lease | 8 |
| 1.80 | New Management Agreement | 8 |
| 1.81 | Non-Bank Holders | 8 |
| 1.82 | Original Series 2007 B Bonds | 9 |
| 1.83 | Other Priority Claim | 9 |
| 1.84 | Other Secured Claim | 9 |
| 1.85 | Other Senior Debt Claim | 9 |
| 1.86 | Person | 9 |
| 1.87 | Petition Date | 9 |
| 1.88 | Plan | 9 |
| 1.89 | Plan Supplement | 9 |
| 1.90 | Priority Tax Claim | 9 |
| 1.91 | Professionals | 9 |
| 1.92 | Proof of Claim | 9 |

| | | | |
|---|---|---|---|
| | 1.93 | Released Parties | 9 |
| | 1.94 | Releasing Parties | 10 |
| | 1.95 | Reorganized Debtor(s | 10 |
| | 1.96 | Reorganized Hingham | 10 |
| | 1.97 | Reorganized Linden Ponds | 10 |
| | 1.98 | Requisite Lender Consent | 10 |
| | 1.99 | Residence & Care Agreements | 10 |
| | 1.100 | Restructuring Support Agreement | 10 |
| | 1.101 | Schedules | 10 |
| | 1.102 | Secured Claim | 10 |
| | 1.103 | Senior Living | 11 |
| | 1.104 | Series 2007 A Bonds | 11 |
| | 1.105 | Series 2007 A Bond Claims | 11 |
| | 1.106 | Series 2007 B/C Bond Claims | 11 |
| | 1.107 | Series 2007 C Bonds | 11 |
| | 1.108 | Series 2011 A-1 Bonds | 11 |
| | 1.109 | Series 2011 A-1 Percentage | 11 |
| | 1.110 | Series 2011 A-2 Bonds | 11 |
| | 1.111 | Series 2011 A-2 Percentage | 11 |
| | 1.112 | Series 2011 B Bonds | 11 |
| | 1.113 | Series 2011 B Percentage | 11 |
| | 1.114 | Transitional Subcontract Agreement | 11 |
| | 1.115 | Trustee Fees | 11 |
| | 1.116 | Unexpired Lease | 12 |
| | 1.117 | Voting Record Date | 12 |
| | 1.118 | Working Capital Loan | 12 |
| B. | | Interpretation:  Application of Definitions and Rules of Construction | 12 |
| Section 2. | | TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND TRUSTEE FEES | 12 |
| | 2.1 | Administrative Claims | 12 |
| | 2.2 | Professional Compensation | 12 |
| | 2.3 | Priority Tax Claims | 13 |
| | 2.4 | Trustee Fees | 13 |
| | 2.5 | DIP Claims | 13 |
| Section 3. | | CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | 13 |
| | 3.1 | Classification and Specification of Treatment of Claims | 13 |
| | 3.2 | Classes of Claims | 14 |
| | 3.3 | Acceptance or Rejection of the Plan | 18 |
| Section 4. | | Means for Implementation of this Plan | 19 |
| | 4.1 | Sources of Consideration | 19 |
| | 4.2 | Cancellation of 2007 Bonds | 19 |
| | 4.3 | Issuance of 2011 Bonds and Execution of 2011 Bond Documents | 19 |
| | 4.4 | Investor Representations and Transfer Restrictions | 19 |
| | 4.5 | Exit Facility | 19 |

| | | | |
|---|---|---|---|
| | 4.6 | New Management Agreement | 19 |
| | 4.7 | Transfer of Hingham's Assets or Interests in Reorganized Hingham. | 20 |
| | 4.8 | Corporate Existence | 20 |
| | 4.9 | Reorganized Linden Ponds' Board of Directors | 20 |
| | 4.10 | Reorganized Hingham's Board of Directors | 20 |
| | 4.11 | Officers of Reorganized Linden Ponds | 20 |
| | 4.12 | Officers of Reorganized Hingham | 20 |
| | 4.13 | Employee Benefits | 20 |
| | 4.14 | Vesting of Assets in the Reorganized Debtor(s) | 21 |
| | 4.15 | Tender of Series 2007 B and C Bonds and Timing of Distributions. | 21 |
| | 4.16 | Restructuring Transactions | 22 |
| | 4.17 | Corporate Action | 22 |
| | 4.18 | Section 1146 Exemption from Certain Taxes and Fees | 23 |
| | 4.19 | Preservation of Causes of Action of the Debtors | 23 |
| | 4.20 | Single Satisfaction of Claims | 23 |
| Section 5. | | Treatment of Executory Contracts and Unexpired Leases | 24 |
| | 5.1 | Assumption and Rejection of Executory Contracts and Unexpired Leases | 24 |
| | 5.2 | Claims Based on Rejection of Executory Contracts or Unexpired Leases | 25 |
| | 5.3 | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | 25 |
| | 5.4 | Insurance Policies | 25 |
| | 5.5 | Modifications, Amendments, Supplements, Restatements or Other Agreements | 25 |
| | 5.6 | Reservation of Rights | 26 |
| | 5.7 | Contracts and Leases Entered Into After the Petition Date | 26 |
| Section 6. | | Provisions Governing Distributions | 26 |
| | 6.1 | Timing and Calculation of Amounts to Be Distributed | 26 |
| | 6.2 | Disbursing Agent | 26 |
| | 6.3 | Rights and Powers of Disbursing Agent | 27 |
| | 6.4 | Payments and Distributions on Disputed Claims | 27 |
| | 6.5 | Special Rules for Distributions to Holders of Disputed Claims | 27 |
| | 6.6 | Delivery of Distributions in General | 27 |
| | 6.7 | Undeliverable Distributions and Unclaimed Property | 27 |
| | 6.8 | Withholding and Reporting Requirements | 28 |
| | 6.9 | Setoffs | 28 |
| | 6.10 | Insurance Claims | 28 |
| | 6.11 | Applicability of Insurance Policies | 28 |
| | 6.12 | Allocation of Distributions Between Principal and Unpaid Interest | 28 |
| Section 7. | | Procedures for Resolving Contingent, Unliquidated and Disputed Claims | 29 |
| | 7.1 | Prosecution of Objections to Claims | 29 |
| | 7.2 | Allowance of Claims | 29 |
| | 7.3 | Distributions After Allowance | 29 |
| | 7.4 | Estimation of Claims | 29 |
| Section 8. | | Settlement, Release, Injunction and Related Provisions | 30 |

| | | |
|---|---|---|
| 8.1 | Compromise and Settlement of Claims, Interests and Controversies | 30 |
| 8.2 | Releases by the Debtors | 30 |
| 8.3 | Releases by Holders of Claims | 30 |
| 8.4 | Exculpation | 31 |
| 8.5 | Discharge of Claims and Termination of Interests | 31 |
| 8.6 | Injunction | 32 |
| 8.7 | Term of Injunctions or Stays | 33 |
| 8.8 | Protection Against Discriminatory Treatment | 33 |
| 8.9 | Release of Liens | 33 |

Section 9.  Conditions Precedent to Confirmation of this Plan and the Effective Date .............. 34

| | | |
|---|---|---|
| 9.1 | Conditions Precedent to Confirmation | 34 |
| 9.2 | Conditions Precedent to the Effective Date | 35 |
| 9.3 | Waiver of Conditions | 35 |
| 9.4 | Effect of Failure of Conditions | 35 |

Section 10.  Modification, Revocation or Withdrawal of this Plan ............................................ 36

| | | |
|---|---|---|
| 10.1 | Modification and Amendments | 36 |
| 10.2 | Effect of Confirmation on Modifications | 36 |
| 10.3 | Revocation or Withdrawal of this Plan | 36 |

Section 11.  Retention of Jurisdiction ...................................................................................... 36

Section 12.  Miscellaneous Provisions ...................................................................................... 39

| | | |
|---|---|---|
| 12.1 | Immediate Binding Effect | 39 |
| 12.2 | Additional Documents | 39 |
| 12.3 | Dissolution of Any Committees | 39 |
| 12.4 | Reservation of Rights | 39 |
| 12.5 | Successors and Assigns | 39 |
| 12.6 | Votes Solicited in Good Faith | 40 |
| 12.7 | Closing of Chapter 11 Cases | 40 |
| 12.8 | Notices | 40 |
| 12.9 | Headings | 41 |
| 12.10 | Severability | 41 |
| 12.11 | Validity and Enforceability | 41 |
| 12.12 | Plan Supplement | 41 |
| 12.13 | Governing Law | 41 |
| 12.14 | Request for Confirmation Pursuant to Bankruptcy Code Sections 1129(a) and 1129(b) | 42 |

Linden Ponds, Inc. and Hingham Campus, LLC propose this Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code.

## SECTION 1.    DEFINITIONS AND INTERPRETATION

### A.        Definitions.

The following terms used herein shall have the respective meanings below:

1.1    ***2007 Bonds*** means the Series 2007 A Bonds, Original Series 2007 B Bonds and Series 2007 C Bonds.

1.2    ***2007 Bond Documents*** means the 2007 Bond Indenture, 2007 Loan Agreement, 2007 Mortgage, 2007 Letter of Credit Agreement or any other agreement of any kind or nature executed in connection with or otherwise providing, granting or perfecting a Lien in connection with the 2007 Bonds.

1.3    ***2007 Bond Indenture*** means that certain Trust Indenture, dated as of July 1, 2007, by and between the Issuer and the 2007 Bond Trustee pursuant to which the 2007 Bonds were issued.

1.4    ***2007 Bond Trustee*** means Wells Fargo Bank, N.A., as successor trustee to Manufacturers and Traders Trust Company, in its capacity as trustee under the 2007 Bond Indenture, and any successor trustee in such capacity.

1.5    ***2007 Letter of Credit Agreement*** means that certain Letter of Credit Agreement by and between Linden Ponds and Sovereign Bank, dated as of July 1, 2007.

1.6    ***2007 Loan Agreement*** means that certain Loan Agreement by and between the Issuer and Linden Ponds, dated as of July 1, 2007.

1.7    ***2007 Mortgage*** means that certain Fee and Leasehold Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing by and between, Linden Ponds and the Issuer, dated as of July 1, 2007

1.8    ***2011 Bond Documents*** means the 2011 Bond Indenture, 2011 Loan Agreement, 2011 Mortgage, 2011 Letter of Credit Agreement and any bonds, loan agreement, mortgage, security agreement, letter of credit, letter of credit agreement or any other agreement executed in connection with or otherwise providing, granting or perfecting a Lien in connection with the issuance of the 2011 Bonds.

1.9    ***2011 Bonds*** means the Amended Series 2007 B Bonds, Series 2011 A-1 Bonds, Series 2011 A-2 Bonds and Series 2011 B Bonds, which together shall be in the aggregate amount of $145,757,805 plus the Allowed amount of certain Other Senior Debt Claims as described in Section 3 of this Plan.

1.10    ***2011 Bond Indenture*** means the Amended and Restated Trust Indenture in the form of Appendix D to the Disclosure Statement (as such indenture may be further

amended, supplemented or modified from time to time) to be entered into by and between the Issuer and the 2011 Bond Trustee, pursuant to this Plan on or after the Effective Date, including all notes and instruments delivered thereto or in connection therewith, in connection with the issuance of the 2011 Bonds, and which shall be in form and substance acceptable to the Debtors.

1.11  ***2011 Bond Trustee*** means Wells Fargo Bank, N.A., in its capacity as trustee under the 2011 Bond Indenture, and any successor trustee in such capacity.

1.12  ***2011 Letter of Credit Agreement*** means that certain Amended and Restated Letter of Credit Agreement in the form of Appendix D to the Disclosure Statement (as such letter of credit agreement may be further amended, supplemented or modified from time to time) to be entered into by and among Reorganized Linden Ponds, the 2011 Bond Trustee and the Bank, pursuant to this Plan on or after the Effective Date.

1.13  ***2011 Loan Agreement*** means the Amended and Restated Loan Agreement,  in the form of Appendix D to the Disclosure Statement (as such loan agreement may be further amended, supplemented or modified from time to time) to be entered into by and between Reorganized Linden Ponds and the Issuer, pursuant to this Plan on or after the Effective Date.

1.14  ***2011 Mortgage*** means the Amended and Restated Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing in the form of Appendix D to the Disclosure Statement (as such mortgage agreement may be amended, supplemented or modified from time to time) to be entered into by and between the Reorganized Debtor(s) and the 2011 Bond Trustee, pursuant to this Plan on or after the Effective Date.

1.15  ***Accrued Professional Compensation*** means, at any given moment, all accrued, contingent and/or unpaid fees (including success fees) for legal, financial advisory, accounting and other services and obligations for reimbursement of expenses rendered or incurred before the Effective Date under sections 328, 330(a), 331 or 363 of the Bankruptcy Code by any retained Professional in the Chapter 11 Cases, or under section 503 of the Bankruptcy Code, that the Bankruptcy Court has not denied by a Final Order, all to the extent that any such fees and expenses have not been previously paid.

1.16  ***Administrative Claim*** means any Claim for payment of costs and expenses of administration pursuant to sections 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) compensation for Accrued Professional Compensation; (c) all fees and charges assessed against the Estates pursuant to chapter 123 of title 28 of the United States Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code.

1.17  ***Allowed*** means, with reference to any Claim against the Debtors, a Claim (i) as to which no objection or request for estimation has been filed on or before any deadline therefor set by the Bankruptcy Court or the expiration of such other applicable period fixed by the Bankruptcy Court or the Plan; (ii) as to which any objection has been settled, waived,

withdrawn or denied by a Final Order or in accordance with the Plan; or (iii) that is allowed (a) by a Final Order, (b) by an agreement between the holder of such Claim and the Debtors or the Reorganized Debtor(s) or (c) pursuant to the terms of the Plan; ***provided***, ***however***, that, notwithstanding anything herein to the contrary, by treating a Claim as "Allowed" under (i) above (the expiration of the applicable deadline), the Debtors do not waive their rights to contest the amount and validity of any disputed, contingent and/or unliquidated Claim in the time, manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced. An Allowed Claim (i) includes a Disputed Claim to the extent such Disputed Claim becomes Allowed after the Effective Date and (ii) shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law. Unless otherwise specified in this Plan, in section 506(b) of the Bankruptcy Code or by Final Order of the Bankruptcy Court, "Allowed" Claims shall not, for purposes of distributions under the Plan, include interest on such Claim accruing from and after the Petition Date.

1.18 ***Amended Series 2007 B Bonds*** means the amendment, restatement and reissuance of the Series 2007 B Bonds to be issued for the benefit of Linden Ponds by the Issuer pursuant to this Plan and the 2011 Bond Indenture in the aggregate amount of $41,815,082, bearing interest at a variable rate or fixed rate, at the election of the Bank as described in Section 3.2.3 of this Plan.

1.19 ***Amended Series 2007 B Percentage*** means 77.51429%.

1.20 ***Assets*** means all assets of the Debtors of any nature whatsoever, including, without limitation, all property of the Estates pursuant to Bankruptcy Code section 541, Cash, Avoidance and Other Actions, equipment, inventory, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of any of the foregoing.

1.21 ***Avoidance and Other Actions*** means all Commercial Tort Claims as well as actions, causes of action, suits, choses in action, and claims of the Debtors and/or the Estates against any entity or Person, whether direct, indirect, derivative or otherwise arising under Bankruptcy Code section 510 or seeking to avoid a transfer of property or recover property pursuant to Bankruptcy Code sections 542 through 550 or applicable non-bankruptcy law.

1.22 ***Bank*** means Sovereign Bank.

1.23 ***Bankruptcy Code*** means title 11 of the United States Code, as now in effect or hereafter applicable to these Chapter 11 Cases.

1.24 ***Bankruptcy Court*** means the United States Bankruptcy Court for the Northern District of Texas having jurisdiction over the Chapter 11 Cases.

1.25 ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as amended, and the local rules of the Bankruptcy Court, as applicable to these Chapter 11 Cases.

1.26 **Business Day** means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close in Dallas, Texas.

1.27 **Cash** means cash and cash equivalents including, without limitation, checks and wire transfers; provided, that other than as set forth in the 2011 Bond Documents, no distributions to be made in Cash under this Plan shall be comprised of any funds held by the 2007 Bond Trustee pursuant to the 2007 Bond Documents or the 2011 Bond Trustee pursuant to the 2011 Bond Documents.

1.28 **Cash Collateral Order** means any order, whether interim or final, allowing the use by the Debtors during the Chapter 11 Cases of the cash collateral of the 2007 Bond Trustee.

1.29 **Causes of Action** means any claim, cause of action, controversy, demand, agreement, right (including to legal or equitable remedies), action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Cause of Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any state law fraudulent transfer claim; and (f) any claim listed in the Plan Supplement.

1.30 **Chapter 11** means chapter 11 of the Bankruptcy Code.

1.31 **Chapter 11 Cases** means the above-captioned cases.

1.32 **Claim** means a claim, as defined by Bankruptcy Code section 101(5), against the Debtors or their Assets, whether or not asserted.

1.33 **Class** means a class or category of Claims as classified and described in Section 3 of this Plan.

1.34 **Commercial Tort Claims** means claims of Linden Ponds arising in tort that arose prior to the Petition Date in the course of Linden Ponds' business.

1.35 **Committee** or **Committees** means any official committee (and any and all subcommittees thereof), if any, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

1.36 **Community Loan** means that certain Amended and Restated Community Loan Agreement, dated July 1, 2007, entered into by and between Linden Ponds and Hingham (as amended, supplemented or modified from time to time).

1.37     ***Confirmation Date*** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket.

1.38     ***Confirmation Hearing*** means the hearing on confirmation of this Plan, and approval of the Disclosure Statement related thereto, pursuant to Bankruptcy Code section 1129.

1.39     ***Confirmation Order*** means the order entered by the Bankruptcy Court confirming this Plan in accordance with Chapter 11 of the Bankruptcy Code.

1.40     ***Consenting Holders*** means, as of the relevant time, parties holding all rights with respect to or otherwise having authority to vote 2007 Bonds or Other Senior Debt Claims that are party to the Restructuring Support Agreement.

1.41     ***Corporate Governance Documents*** means the certificates of incorporation, certificates of formation, limited liability agreements and by-laws of the Debtors and the Reorganized Debtor(s).

1.42     ***Creditor*** means a holder of a Claim.

1.43     ***Cure*** means the payment of Cash by the Reorganized Debtor(s), or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (i) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease of the Debtors and (ii) permit the Reorganized Debtor(s) to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

1.44     ***Current Management Agreement*** means the Management and Marketing Agreement dated November 26, 2003, by and between Linden Ponds and Senior Living.

1.45     ***Debtors*** means Linden Ponds and Hingham, as debtors and debtors-in-possession, and includes the Estates, where appropriate.

1.46     ***DIP Claims*** mean any Claim derived from or based upon the DIP Loan Agreement.

1.47     ***DIP Facility*** means any debtor-in-possession financing facility or facilities established pursuant to the DIP Loan Agreement.

1.48     ***DIP Lender*** means the lender (or lenders) party to the DIP Loan Agreement from time to time, each in its (or their) capacity as such.

1.49     ***DIP Loan Agreement*** means the credit agreement and related security agreements, mortgages and similar documents governing the DIP Facility by and between the Debtors and the DIP Lender.

1.50     ***Disallowed Claim*** means any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

1.51 ***Disbursing Agent*** means the Debtors or the Reorganized Debtor(s), or the entity or entities chosen by the Debtors or the Reorganized Debtor(s) to make or facilitate distributions pursuant to this Plan.

1.52 ***Disclosure Statement*** means the Offering Memorandum, Consent Solicitation and Disclosure Statement Soliciting Acceptances of a Plan, dated June 14, 2011, as the same may be altered, modified, or amended.

1.53 ***Disputed*** means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed and is subject to a claims objection filed before any deadline set by the Bankruptcy Court.

1.54 ***Distribution Date*** means the date, occurring as soon as practicable after the Effective Date, on which the Disbursing Agent first makes distributions to holders of Allowed Claims as provided in this Plan and any date thereafter on which the Disbursing Agent makes distributions to holders of Allowed Claims as provided in this Plan.

1.55 ***Distribution Notice*** shall have the meaning given to such term in Section 4.15 of this Plan.

1.56 ***Distribution Record Date*** means, other than with respect to public securities cancelled by the Plan, the Effective Date or such other date as may be designated in the Confirmation Order.

1.57 ***DTC*** means The Depository Trust Company.

1.58 ***Effective Date*** means a Business Day selected by the Debtors, which is, unless the Confirmation Order directs otherwise, five (5) Business Days after the date on which each of the conditions to this Plan's Effective Date set forth herein has either been satisfied or waived in accordance with this Plan.

1.59 ***Estates*** means the estates of Debtors created by the Debtors' Chapter 11 Cases pursuant to Bankruptcy Code section 541.

1.60 ***Exculpated Claim*** means any claim related to any act or omission in connection with, relating to or arising out of the Debtors' in or out of court restructuring efforts, the Chapter 11 Cases, formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement or this Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation of this Plan, the administration and implementation of this Plan, the issuance of the 2011 Bonds, the execution and delivery of the 2011 Bond Documents, or the distribution of property under the Plan or any other related agreement; ***provided***, ***however***, that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct or fraud to the extent imposed by applicable non-bankruptcy law. For the avoidance of doubt, no Cause of Action, obligation or liability expressly set forth in or preserved by the Plan or the Plan Supplement constitutes an Exculpated Claim.

1.61    ***Exculpated Party*** means each of: (i) the Debtors and their member or members, (ii) the Reorganized Debtor(s) and their member or members, (iii) the Manager in any capacity, (iv) each Consenting Holder in any capacity, (v) the Issuer, (vi) the 2007 Bond Trustee in any capacity, (vii) the 2011 Bond Trustee in any capacity, (viii) the DIP Lender and (ix) the current and former officers, directors, members, managers, employees, attorneys and advisors, each in their respective capacities as such, of each of the foregoing.

1.62    ***Executory Contract*** means a contract to which one or more of the Debtors is a party that is capable of assumption or rejection under section 365 of the Bankruptcy Code.

1.63    ***Exit Facility*** means any financing facility provided or to be provided to Reorganized Linden Ponds on and after the Effective Date.

1.64    ***Facility*** means the continuing care retirement community known as Linden Ponds, located in Hingham, Massachusetts which is a full service facility which offers residents a full lifecycle of services during their retirement years from independent living to skilled nursing care.  This retirement community provides affordable living accommodations and related healthcare and support services to a target market of middle income residents aged sixty two (62) years and older.

1.65    ***Facility Site*** means the land on which the Facility is located and certain undeveloped land all as further described in Exhibit A to the 2011 Mortgage.

1.66    ***Final Order*** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; ***provided***, ***however***, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024, may be filed relating to such order shall not cause such order to not be a Final Order.

1.67    ***Hingham*** means Hingham Campus, LLC.

1.68    ***Hingham General Unsecured Claim*** means any unsecured Claim against Hingham that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, Series 2007 A Bond Claim, Series 2007 B/C Bond Claim, Other Senior Debt Claim, Manager Claim or Linden Ponds General Unsecured Claim.

1.69    ***IED*** means the initial entrance deposit that the first resident to occupy each unit at the Facility pays to Linden Ponds pursuant to a Residence & Care Agreement.

1.70    ***Insurance Policies*** means, collectively, all of the Debtors' insurance policies.

1.71    ***Interest*** means the interest of any holder in an equity security of any Debtor, within the meaning of Bankruptcy Code section 101(16) represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in a Debtor.

1.72    ***Issuer*** means Massachusetts Development Finance Agency, a body politic and corporate and a public instrumentality of The Commonwealth of Massachusetts.

1.73    ***L/C Draw Claims*** means any Other Senior Debt Claim for any unreimbursed draws for interest, together with any accrued and unpaid interest thereon at the non-default rate, in each case through the Effective Date, plus any accrued but unpaid letter of credit fees (prorated for the period until the Effective Date), in each case in accordance with the 2007 Letter of Credit Agreement.

1.74    ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.75    ***Linden Ponds*** means Linden Ponds, Inc.

1.76    ***Linden Ponds General Unsecured Claim*** means any unsecured Claim against Linden Ponds that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, Series 2007 A Bond Claim, Series 2007 B/C Bond Claim, Other Senior Debt Claim, Manager Claim or Hingham General Unsecured Claim.

1.77    ***Manager*** means Erickson Living Management, LLC, as manager of the Facility pursuant to the Management Agreement.

1.78    ***Manager Claims*** means (i) all Claims held by the Manager against Hingham or Linden Ponds and (ii) any and all Claims against Hingham in respect of advances or loans made by Senior Living, its affiliates, members, predecessors, successors or assignees regardless of which entity currently holds such Claims.

1.79    ***Master Lease*** means that certain Amended and Restated Master Lease and Use Agreement, dated November 26, 2003, entered into by and between Linden Ponds and Hingham (as amended, supplemented or modified from time to time) whereby Linden Ponds leases the Facility Site and the Facility from Hingham.

1.80    ***New Management Agreement*** means that certain Management Agreement to be entered into by and between the Manager and Linden Ponds on or prior to the Effective Date in the form of Exhibit 11 to the Disclosure Statement in accordance with Section 3.2.6 of this Plan.

1.81    ***Non-Bank Holders*** shall have the meaning given to such term in Section 4.15 of this Plan.

1.82    ***Original Series 2007 B Bonds*** means the Revenue Bonds (Linden Ponds, Inc. Facility), Series 2007 B (Tax-Exempt), in the original aggregate principal amount of $45,000,000 issued for the benefit of Linden Ponds by the Issuer pursuant to the 2007 Bond Indenture.

1.83    ***Other Priority Claim*** means any Claim entitled to priority under Bankruptcy Code sections 507(a)(4) and 507(a)(5).

1.84    ***Other Secured Claim*** means any Secured Claim other than a Series 2007 A Bond Claim or Series 2007 B/C Bond Claim.

1.85    ***Other Senior Debt Claim*** means any Claim for indebtedness, reasonable fees, reasonable expenses and reasonable costs pursuant to the terms of the 2007 Letter of Credit Agreement and any related letter of credit documents.

1.86    ***Person*** means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, without limitation, the Debtors.

1.87    ***Petition Date*** means June 14, 2011.

1.88    ***Plan*** means this Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated June 14, 2011, as altered, modified, or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.89    ***Plan Supplement*** means the compilation of documents and forms of documents, schedules, and exhibits to this Plan, to be filed prior to the Confirmation Hearing, as amended, supplemented, or modified from time to time in accordance with the terms hereof and the terms of the Restructuring Support Agreement, the Bankruptcy Code, and the Bankruptcy Rules, including:  a schedule of Causes of Action to be retained by the Reorganized Debtor(s) after the Effective Date.

1.90    ***Priority Tax Claim*** means any Claim of a governmental unit of a kind entitled to priority under Bankruptcy Code section 507(a)(8), if Allowed.

1.91    ***Professionals*** means all professionals employed in these Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 363 and 1103.

1.92    ***Proof of Claim*** means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

1.93    ***Released Parties*** means (i) the Debtors and their member or members, (ii) the Reorganized Debtor(s) and their member or members, (iii) the Manager in any capacity, (iv) each Consenting Holder in any capacity, (v) the Issuer, (vi) the 2007 Bond Trustee in any capacity, (vii) the 2011 Bond Trustee in any capacity, (viii) the DIP Lender and (ix) the current and former officers, directors, members, managers, employees, attorneys and advisors, each in their respective capacities as such, of each of the foregoing.

1.94 ***Releasing Parties*** means all Persons who have held, hold or may hold Claims or Interests that have been released, discharged or are subject to exculpation pursuant to this Plan.

1.95 ***Reorganized Debtor(s)*** means (i) Reorganized Linden Ponds; and (ii) Reorganized Hingham, in the event that the Debtors elect, pursuant to Section 4.7 of this Plan, to have all of the Interests in Reorganized Hingham transferred to Reorganized Linden Ponds rather than having all of Hingham's assets transferred to Reorganized Linden Ponds.

1.96 ***Reorganized Hingham*** means, in the event that the Debtors elect to have all of the Interests in Reorganized Hingham transferred to Reorganized Linden Ponds rather than having all of Hingham's assets transferred to Reorganized Linden Ponds pursuant to Section 4.7 of this Plan, reorganized Hingham, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date, after giving effect to the restructuring transactions occurring on the Effective Date in accordance with this Plan.

1.97 ***Reorganized Linden Ponds*** means reorganized Linden Ponds, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date, after giving effect to the restructuring transactions occurring on the Effective Date in accordance with this Plan.

1.98 ***Requisite Lender Consent*** means the consent of the parties that hold or have the authority to vote at least 40% of the aggregate outstanding principal amount of 2007 Bonds as of the relevant time that such consent is provided.

1.99 ***Residence & Care Agreements*** means those certain residence and care agreements entered into by and between the residents of the Facility and Linden Ponds and any additional documents related thereto.

1.100 ***Restructuring Support Agreement*** means that certain Restructuring, Lockup, Plan Support and Forbearance dated as of June 8, 2011, entered into by and among each of the Debtors, the Bond Trustee and the Consenting Holders on the date thereof, as may be amended, supplemented or otherwise modified from time to time in accordance with the terms thereof.

1.101 ***Schedules*** means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs, if any, filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

1.102 ***Secured Claim*** means any Claim of a Creditor that is secured by property of the Estates, to the extent of the value of the Creditor's interest in the Estates' interest in such property, as provided in Bankruptcy Code section 506(a). Secured Claim also means a Claim of a creditor that is subject to setoff under Bankruptcy Code section 553, to the extent of the amount subject to setoff, as provided in Bankruptcy Code section 506(a).

1.103 **_Senior Living_** means Senior Living Retirement Communities LLC, formerly known as Erickson Retirement Communities, LLC.

1.104 **_Series 2007 A Bonds_** means the Revenue Bonds (Linden Ponds, Inc. Facility), Series 2007 A (Tax-Exempt), in the original aggregate principal amount of $101,365,000 issued for the benefit of Linden Ponds by the Issuer pursuant to the 2007 Bond Indenture.

1.105 **_Series 2007 A Bond Claims_** means any and all Claims in respect of the Series 2007 A Bonds.

1.106 **_Series 2007 B/C Bond Claims_** means any and all Claims in respect of the Original Series 2007 B Bonds, Series 2007 C Bonds or any other Parity Debt (as defined in the 2007 Bond Indenture), including Other Senior Debt Claims, other than the Series 2007 A Bond Claims.

1.107 **_Series 2007 C Bonds_** means the Revenue Bonds (Linden Ponds, Inc. Facility), Series 2007 C (Taxable), in the original aggregate principal amount of $10,000,000 issued for the benefit of Linden Ponds by the Issuer pursuant to the 2007 Bond Indenture.

1.108 **_Series 2011 A-1 Bonds_** means the Revenue Bonds (Linden Ponds, Inc. Facility), Series 2011 A-1, to be issued for the benefit of Linden Ponds by the Issuer pursuant to this Plan and the 2011 Bond Indenture in the aggregate amount of $69,712,722, bearing interest at 6.25% per annum.

1.109 **_Series 2011 A-1 Percentage_** means 77.51429%.

1.110 **_Series 2011 A-2 Bonds_** means the Revenue Bonds (Linden Ponds, Inc. Facility), Series 2011 A-2, to be issued for the benefit of Linden Ponds by the Issuer pursuant to this Plan and the 2011 Bond Indenture in the aggregate amount of $5,730,000 plus the Allowed amount of certain Other Senior Debt Claims, bearing interest at 5.5% per annum.

1.111 **_Series 2011 A-2 Percentage_** means 3.76404%

1.112 **_Series 2011 B Bonds_** means the Revenue Bonds (Linden Ponds, Inc. Facility), Series 2011 B, to be issued for the benefit of Linden Ponds by the Issuer pursuant to this Plan and the 2011 Bond Indenture in the aggregate amount of $28,500,000, not bearing interest.

1.113 **_Series 2011 B Percentage_** means 18.72167%

1.114 **_Transitional Subcontract Agreement_** means the Transitional Subcontract Agreement effective April 30, 2010 among Senior Living, the Manager, Linden Ponds and the 2007 Bond Trustee.

1.115 **_Trustee Fees_** means all fees and charges assessed against the Estates of the Debtors under 28 U.S.C. § 1930 of the United States Code.

1.116  *Unexpired Lease* means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.117  *Voting Record Date* means the Expiration Time (as defined in the Disclosure Statement), as such date may be extended from time to time.

1.118  *Working Capital Loan* means that certain Amended and Restated Working Capital Loan Agreement, dated July 1, 2007, entered into by and between Linden Ponds and Hingham (as amended, supplemented or modified from time to time).

**B.      Interpretation:  Application of Definitions and Rules of Construction**.

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.   The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein.   A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code.   The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan.   The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.   Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified.   If a time or date is specified for any payments or other distribution under the Plan, it shall mean on or as soon as reasonably practicable thereafter.   Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral.

**SECTION 2.    TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND TRUSTEE FEES**

2.1      *Administrative Claims*.   In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims have not been classified and are treated as described herein. Except as otherwise provided in this Plan, by written agreement of the holder of an Allowed Administrative Claim to accept different treatment than provided under this Plan, or by order of the Bankruptcy Court, a Person holding an Allowed Administrative Claim will receive Cash equal to the unpaid portion of such Allowed Administrative Claim which has come due for payment under any applicable order or law, as soon as practicable after the later of:  (a) the third Business Day after the Effective Date; (b) the date on which such Person becomes the holder of such an Allowed Administrative Claim; or (c) the date or dates when that Claim is payable by its terms, consistent with past practice and in accordance with past terms.   Allowed Administrative Claims shall only be made in accordance with any Final Order of the Bankruptcy Court.   The Debtors estimate that there will be approximately $6,600,000 in Allowed Administrative Claims.

2.2      *Professional Compensation*.   Professionals or other Persons asserting a Claim for Accrued Professional Compensation for services rendered before the Effective Date must file and serve on the Debtors, the Reorganized Debtor(s) and such other Persons who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy

Court an application for final allowance of such Claim for Accrued Professional Compensation no later than 60 days after the Effective Date. Objections to any Claim for Accrued Professional Compensation must be filed and served on the Reorganized Debtor(s), the Office of the U.S. Trustee and the requesting party no later than 90 days after the Effective Date.

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor(s) may employ and pay any professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to any party or action, order or approval of the Bankruptcy Court.

2.3 ***Priority Tax Claims***. In accordance with Bankruptcy Code section 1123(a)(1), Priority Tax Claims have not been classified and are treated as described in this Section 2 of this Plan. Unless otherwise agreed by the holder of an Allowed Priority Tax Claim, any Person holding an Allowed Priority Tax Claim will receive, as determined by the Reorganized Debtor(s) in its or their sole discretion and in full satisfaction of such Claim: (a) payment in Cash in full on the later of the Effective Date or the date such Claim becomes an Allowed Claim; or (b) Cash over a period not exceeding five (5) years after the Petition Date, with interest at a rate equal to four percent (4%) per year, payable monthly, in periodic payments, having the value of such Claim as of the Effective Date. All real estate taxes that are accrued and unpaid, as of the Effective Date, will be paid in Cash in full on the Effective Date. The Debtors estimate that there will be $1,700,000 in Priority Tax Claims.

2.4 ***Trustee Fees***. Trustee Fees include all fees and charges assessed against the Debtors' Estates under section 1930 of title 28 of the United States Code. All Trustee Fees will be paid in full by the Reorganized Debtor(s) as they become due and owing.

2.5 ***DIP Claims***. Except to the extent that a holder of an Allowed DIP Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in exchange for each and every Allowed DIP Claim, each such Allowed DIP Claim shall, in the discretion of the Debtors, (i) be paid in full in Cash on the Effective Date or as soon as practicable thereafter or (ii) with the consent of the holder of such DIP Claim and the Requisite Lender Consent, be converted into the Exit Facility.

**SECTION 3.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

3.1 ***Classification and Specification of Treatment of Claims***. All Claims, except those described in Section 2, are placed in the following Classes of Claims, pursuant to Bankruptcy Code section 1123(a)(1), which section specifies the treatment of such Classes of Claims and of their impaired or unimpaired status, pursuant to Bankruptcy Code sections 1123(a)(2) and 1123(a)(3). A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class to the extent that the Claim qualifies within the description of that different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released, withdrawn, waived, or otherwise satisfied under this Plan. Unless this Plan expressly provides otherwise, when a Class includes a subclass, each subclass is a separate Class

for all purposes under the Bankruptcy Code, including, without limitation, voting and distribution.

Subject to all other applicable provisions of this Plan (including its distribution provisions), classified Claims shall receive the treatment set forth below. This Plan will not provide any distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties. Except as specifically provided in this Plan, this Plan will not provide any distributions on account of a Claim, the payment of which has been assumed by a third party.

3.2     *Classes of Claims*.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Series 2007 A Bond Claims | Impaired | Entitled to Vote |
| 3 | Series 2007 B/C Bond Claims | Impaired | Entitled to Vote |
| 4 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 5 | Linden Ponds General Unsecured Claims | Unimpaired | Deemed to Accept |
| 6 | Hingham General Unsecured Claims | Impaired | Deemed to Reject |
| 7 | Manager Claims | Impaired | Entitled to Vote |
| 8 | Interests in Linden Ponds | Unimpaired | Deemed to Accept |
| 9 | Interests in Hingham | Impaired | Deemed to Reject |

3.2.1   Class 1 — Other Priority Claims.  This Class consists of all Allowed Other Priority Claims that are specified as having priority in Bankruptcy Code section 507(a), if any such Claims still exist as of the Effective Date. Each Allowed Claim in this Class shall be in a separate subclass. Unless otherwise agreed by the holder of any Claim in this Class, each Allowed Claim under Bankruptcy Code section 507(a), which has not been satisfied as of the Effective Date, in full and final satisfaction and discharge of and in exchange for each Allowed Other Priority Claim, will receive (i) deferred Cash payments of a value, as of the Effective Date, equal to the holder's Allowed Other Priority Claim or (ii) payment in Cash in full on the later of:  (a) the third (3rd) Business Day after the Effective Date or as soon as reasonably practicable thereafter as determined by the Disbursing Agent; and (b) the date on which there is a Final Order allowing such Claim. The Debtors estimate that the Allowed Class 1 Claims will be $0 on the Effective Date.

3.2.2   Class 2 — Series 2007 A Bond Claims.  This Class consists of all Series 2007 A Bond Claims and includes all Claims of the holders of the Series 2007 A Bonds, which Claims shall be deemed Allowed pursuant to this Plan in the aggregate principal amount of (i) $98,285,000 plus (ii) unpaid reasonable fees and expenses of the 2007 Bond Trustee as of the Effective Date (less any amounts paid to the 2007 Bond Trustee as part of the distribution to Class 3 Claims) plus (iii) accrued and unpaid interest on the Series 2007 A Bonds as of the Effective Date. Upon the terms and subject to the conditions set forth in this Plan, on the Effective Date, in full and final satisfaction and discharge of and in exchange for each Allowed Series 2007 A Bond Claim:

- Each holder of an outstanding Series 2007 A Bond will receive:

  o a Series 2011 A-1 Bond in a principal amount equal to the Series 2011 A-1 Percentage of the principal amount of the Series 2007 A Bond so tendered bearing interest at a rate of 5.5%, with the principal amount of such bond being reduced by multiplying the Series 2011 A-1 Percentage by the 2007 A Series Factor corresponding to such Series 2007 A Bond below and the interest rate being increased to 6.25% per annum (in each case, prior to issuance) so that the cumulative debt service for such bond will be the same as if the par amount thereof accrued interest at 5.5% per annum at the higher principal amount;

| Original CUSIP (2007 A Bonds) | Original Maturity (2007 A Bonds) | Maturity (2011 A-1 Bonds) | 2007 A Series Factor |
|---|---|---|---|
| 57583RPL3 | 11/15/2011 | 11/15/2013 | 0.9818664753 |
| 57583RPM1 | 11/15/2012 | 11/15/2014 | 0.9673413268 |
| 57583RPP4 | 11/15/2014 | 11/15/2017 | 0.9442425124 |
| 57583RPQ2 | 11/15/2015 | 11/15/2018 | 0.9306268897 |
| 57583RPR0 | 11/15/2016 | 11/15/2019 | 0.9254893529 |
| 57583RPS8 | 11/15/2017 | 11/15/2020 | 0.9213127500 |
| 57583RPT6 | 11/15/2018 | 11/15/2021 | 0.9179318442 |
| 57583RPU3 | 11/15/2022 | 11/15/2026 | 0.9109989513 |
| 57583RPV1 | 11/15/2027 | 11/15/2031 | 0.9084096035 |
| 57583RPW9 | 11/15/2035 | 11/15/2039 | 0.9097238063 |
| 57583RPX7 | 11/15/2042 | 11/15/2046 | 0.9147238610 |

  o a Subseries I of Series 2011 A-2 Bond in a principal amount equal to the Series 2011 A-2 Percentage of the principal amount of the Series 2007 A Bond held; and

  o a Series 2011 B Bond in a principal amount equal to the Series 2011 B Percentage of the principal amount of the Series 2007 A Bond held.

- Each holder of an outstanding Series 2007 A Bond will receive in Cash accrued and unpaid interest on such Series 2007 A Bond as of the Effective Date.

- The 2007 Bond Trustee will receive payment of all of its unpaid reasonable fees and expenses due under the 2007 Bond Indenture in Cash, less any such fees and expenses paid to the 2007 Bond Trustee as part of the distributions under this Plan on account of Class 3 Claims.

3.2.3 Class 3 — Series 2007 B/C Bond Claims. This Class consists of all Series 2007 B/C Bond Claims and includes (a) all Claims of the holders of the (i) Original Series 2007 B Bonds, which Claims shall be deemed Allowed pursuant to this Plan in the aggregate principal amount of $43,945,000, (ii) Series 2007 C Bonds, which Claims shall be deemed Allowed pursuant to this Plan in the aggregate principal amount of $10,000,000 plus (iii) unpaid reasonable fees and expenses of the 2007 Bond Trustee as of the Effective Date (less any amounts paid to the 2007 Bond Trustee under this Plan as part of the distribution to Class 2

Claims) plus (iv) accrued and unpaid interest on the Series 2007 B Bonds and the Series 2007 C Bonds as of the Effective Date; and (b) all Other Senior Debt Claims. Upon the terms and subject to the conditions set forth in this Plan, on the Effective Date, in full and final satisfaction and discharge of and in exchange for each Allowed Series 2007 B/C Bond Claim:

- Each holder of the outstanding Original Series 2007 B Bonds or Series 2007 C Bonds will receive:

    o Amended Series 2007 B Bonds in an aggregate principal amount equal to the Amended Series 2007 B Percentage of the principal amount of the Original Series 2007 B Bond and/or Series 2007 C Bond; provided that, the Amended Series 2007 B Bonds will be issued, in accordance with the terms and conditions of the 2011 Bond Documents, either in fixed rate mode bearing interest at 5.5% per annum to maturity or variable rate mode at the election of the Bank by the Bank delivering written notice of such election to the Debtors and the 2011 Bond Trustee, and filing such notice with the Bankruptcy Court, within five (5) Business Days following the Confirmation Date; provided, further that, if such notice is not timely delivered and filed or if the Bank elects to receive such bonds in variable rate mode but fails to deliver the applicable letter of credit on or prior to the Effective Date, the Amended Series 2007 B Bonds will be issued to the Bank in fixed rate mode;

    o Subseries II of Series 2011 A-2 Bonds in an aggregate principal amount equal to the Series 2011 A-2 Percentage of the principal amount of the Original Series 2007 B Bond and/or Series 2007 C Bond; and

    o Series 2011 B Bonds in an aggregate principal amount equal to the Series 2011 B Percentage of the principal amount of the Series 2007 B Bond and/or Series 2007 C Bond.

- Each holder of an outstanding Original Series 2007 B Bond or Series 2007 C Bond will receive accrued and unpaid interest to the Effective Date on such Original Series 2007 B Bond or Series 2007 C Bond.

- The Bank will receive Subseries II of Series 2011 A-2 Bonds in an aggregate principal amount equal to the Allowed Other Senior Debt Claims other than the L/C Draw Claims, provided that notwithstanding any provision of this Plan, the Disclosure Statement or any provision of the Confirmation Order to the contrary, no Other Senior Debt Claims for late payment fees under the 2007 Letter of Credit Agreement or any related letter of credit documents, whether denominated as a "late charge" under section 5.3 of the 2007 Letter of Credit Agreement or otherwise, shall be an Allowed Claim, and no distribution shall be made under this Plan on account of such Claims, if any.

- The Bank will receive payment in Cash for any Allowed L/C Draw Claims.

- The 2007 Bond Trustee will receive payment in Cash of all of its unpaid reasonable fees and expenses due under the 2007 Bond Indenture, less any such fees and expenses paid to the 2007 Bond Trustee as part of the distributions under this Plan on account of Class 2 Claims.

- Notwithstanding anything contained in this Plan, the rights of the beneficial holders of the Original Series 2007 B Bonds and the Series 2007 C Bonds against the Bank under the 2007 Letter of Credit Agreement or any related letter of credit documents shall remain unaffected by this Plan.

3.2.4   Class 4 — Other Secured Claims.   This Class consists of all Secured Claims other than Series 2007 A Bond Claims, Series 2007 B/C Bond Claims and Other Senior Debt Claims.   Except to the extent that a holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction and discharge of and in exchange for each Allowed Other Secured Claim, on the later of the Effective Date and the date such Other Secured Claim becomes Allowed, or as soon as practicable thereafter, at the sole option of the Reorganized Debtor(s), each Allowed Other Secured Claim shall have its Other Secured Claim reinstated and otherwise leave unaltered the legal, equitable and contractual rights to which the holder of such Claim is entitled in accordance with section 1124 of the Bankruptcy Code.   The Debtors estimate that the Allowed Class 4 Claims will be $0 on the Effective Date.

3.2.5   Class 5 — Linden Ponds General Unsecured Claims.   This Class consists of all Linden Ponds General Unsecured Claims.   Except to the extent that a holder of an Allowed Linden Ponds General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction and discharge of and in exchange for each Linden Ponds General Unsecured Claim, each holder of an Allowed Linden Ponds General Unsecured Claim will receive payment in full in Cash of the unpaid portion of such Allowed Linden Ponds General Unsecured Claim on the latest of (1) the third (3rd) Business Day after the Effective Date or as soon as practicable thereafter as determined by the Disbursing Agent, (2) the date such Allowed Linden Ponds General Unsecured Claim becomes due and payable in the ordinary course of business and (3) as otherwise agreed to by the Debtors and the holder of such Claim, and this Plan shall otherwise leave unaltered the legal, equitable and contractual rights to which the holder of such Claim is entitled; provided, however, that the Debtors may seek authority from the Bankruptcy Court to pay certain Linden Ponds General Unsecured Claims in advance of the Effective Date in the ordinary course of business.   The Debtors reserve their rights, however, to dispute the validity of any Linden Ponds General Unsecured Claim, whether or not objected to prior to the Effective Date.   The Debtors estimate that the Allowed Class 5 Claims will be approximately $5,000,000 on the Effective Date.   Notwithstanding the foregoing, no distributions shall be made in respect of any intercompany Claims against Hingham or Linden Ponds by Linden Ponds or Hingham, respectively, or any successor or assignee thereof.

3.2.6   Class 6 — Hingham General Unsecured Claims.   This Class consists of all Hingham General Unsecured Claims.   Holders of Allowed Hingham General Unsecured Claims shall not receive any distribution in respect of any Hingham General Unsecured Claims.   The Debtors estimate that the Allowed Class 6 Claims will be approximately $0 on the Effective Date.

3.2.7   Class 7 — Manager Claims.  This Class consists of all Manager Claims.  In full and final satisfaction and discharge of and in exchange for the Manager Claims, (i) Linden Ponds will enter into the New Management Agreement with the Manager on or prior to the Effective Date and (ii) the Manager will receive payment in full in Cash of the unpaid portion of the Claims arising pursuant to the Transitional Subcontract Agreement or the Current Management Agreement on the latest of (1) the third (3rd) Business Day after the Effective Date or as soon as practicable thereafter as determined by the Disbursing Agent, (2) the date such Claim becomes due and payable in the ordinary course of business and (3) as otherwise agreed to by the Debtors and the Manager.  No distribution shall be made in respect of any other Manager Claims.

3.2.8   Class 8 — Interests in Linden Ponds.  This Class consists of all ownership interests in Linden Ponds.  Interests in Linden Ponds shall be reinstated on the Effective Date.

3.2.9   Class 9 — Interests in Hingham.  This Class consists of all ownership interests in Hingham.  On the Effective Date and in accordance with Section 4.7 of this Plan, at the discretion of the Debtors, (i) all of the assets of Hingham shall be transferred to Reorganized Linden Ponds, the agreements between Hingham and Linden Ponds shall be terminated, Hingham shall cease operations and, as soon as practical thereafter, all Interests in Hingham shall be extinguished and Hingham shall be dissolved or (ii) all of the Interests in Reorganized Hingham shall be transferred to Reorganized Linden Ponds.

3.3   *Acceptance or Rejection of the Plan*.

3.3.1   Acceptance by an Impaired Class.  In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

3.3.2   Presumed Acceptance of the Plan.  Classes 1, 4, 5 and 8 are unimpaired under this Plan and are, therefore, conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

3.3.3   Presumed Rejection of the Plan.  Classes 6 and 9 are not entitled to receive or retain any property under this Plan and are, therefore, conclusively presumed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.

3.3.4   Voting Class.  Classes 2, 3 and 7 are impaired under this Plan, and holders of Class 2 Series 2007 A Bond Claims, Class 3 Series 2007 B/C Bond Claims and Class 7 Manager Claims as of the Voting Record Date are entitled to vote to accept or reject this Plan.

## SECTION 4.   MEANS FOR IMPLEMENTATION OF THIS PLAN

4.1   *Sources of Consideration*.  All Cash consideration necessary for the Reorganized Debtor(s) to make payments or distributions pursuant hereto shall be obtained from the Cash on hand of the Reorganized Debtor(s), including Cash derived from business operations

and to the extent necessary from the Exit Facility, to the extent such facility is permitted under Section 2.5 of this Plan.

4.2    ***Cancellation of 2007 Bonds***.  Subject to the receipt of the consideration provided for in Sections 3.2.2 and 3.2.3 hereof, the 2007 Bonds will be cancelled on the Effective Date.

4.3    ***Issuance of 2011 Bonds and Execution of 2011 Bond Documents***.  On the Effective Date, the Issuer will issue, in accordance with the terms of the Plan and pursuant to the 2011 Bond Indenture, 2011 Bonds in the aggregate principal amount of $145,757,805 plus the Allowed amount of certain Other Senior Debt Claims as described in Section 3 of this Plan. In connection with the foregoing matters described in this Section 4.3, on the Effective Date, the Issuer and the 2011 Bond Trustee will enter into the 2011 Bond Indenture and Reorganized Linden Ponds, the Issuer, the 2011 Bond Trustee and the Bank, as applicable, will enter into the 2011 Loan Agreement, the 2011 Mortgage and the other 2011 Bond Documents.  The 2007 Bond Trustee shall transfer all funds and accounts created and/or maintained under or pursuant to the 2007 Bond Indenture in accordance with the 2011 Bond Documents.

4.4    ***Investor Representations and Transfer Restrictions***.    Prior to Reorganized Linden Ponds obtaining a rating for the particular subseries of the 2011 Bonds in a rating category not lower than "Ba" by Moody's Investors, Inc., "BB-" by Standard & Poor's Rating Services or "BB-" by Fitch Ratings for a particular subseries of the 2011 Bonds, the beneficial holder of a 2011 Bond of such subseries shall not be permitted to transfer or sell such bond other than as follows:

- A transfer or sale to a person who is an "accredited investor" as defined in Section 2(15) of the Securities Act of 1933 upon the execution and delivery to the 2011 Bond Trustee of an Investor Letter in the form set out in Appendix G of the Disclosure Statement; or

- A transfer or sale to a person who is a "qualified institutional buyer," within the meaning of Section 144 of the Securities Act of 1933;

4.5    ***Exit Facility.***  On the Effective Date, with the consent of the DIP Lender and the Requisite Lender Consent, the Debtors may (but shall not be required to) convert the DIP Facility into an Exit Facility.

4.6    ***New Management Agreement.***  To the extent not entered into prior thereto, on the Effective Date, Linden Ponds and the Manager will enter into the New Management Agreement in the form of Exhibit 11 to the Disclosure Statement in accordance with Section 3.2.6 of this Plan.

4.7    ***Transfer of Hingham's Assets or Interests in Reorganized Hingham.*** On the Effective Date or as soon as reasonably practicable thereafter, at the sole election of the Debtors either (i) all of the material assets of Hingham will be transferred to Reorganized Linden Ponds, including without limitation the Facility and the Facility Site, the agreements between Hingham and Linden Ponds will be terminated, Hingham will cease operations, all Interests in Hingham be extinguished and Hingham be dissolved or (ii) in accordance with Section 4.11 of

this Plan all of the assets of Hingham will vest in Reorganized Hingham and all of the Interests in Reorganized Hingham shall be distributed to Reorganized Linden Ponds in accordance with Section 3.2.9 of this Plan.  Consistent with 4.7(i) and (ii) above, Hingham shall have full authority to take any action necessary to wind-up its affairs, liquidate, transfer or abandon assets, and dissolve and terminate the existence of Hingham in a manner and in accordance with the best means to maximize assets and minimize expenses or costs associated with such liquidation under applicable state laws and in accordance with the rights, powers and responsibilities conferred by the Bankruptcy Code, this Plan and any order of the Bankruptcy Court.

4.8     ***Corporate Existence.***     Except as otherwise provided herein, in the Corporate Governance Documents or elsewhere in the Plan Supplement, Reorganized Linden Ponds shall continue to exist after the Effective Date as a separate non-stock corporate entity with all the powers of a non-stock corporation, pursuant to the applicable law in the jurisdiction in which Reorganized Linden Ponds is incorporated or formed.  To the extent the Debtors elect to transfer the Interests in Reorganized Hingham to Reorganized Linden Ponds in accordance with Sections 3.2.9 and 4.7 of this Plan and except as otherwise provided herein, in the Corporate Governance Documents or elsewhere in the Plan Supplement, Reorganized Hingham shall continue to exist after the Effective Date as a corporate entity with all the powers of a corporation, pursuant to the applicable law in the jurisdiction in which Reorganized Hingham is incorporated or formed.

4.9     ***Reorganized Linden Ponds' Board of Directors.***     The existing members of the Linden Ponds Board of Directors shall continue to be members of the Board of Directors of Reorganized Linden Ponds.

4.10     ***Reorganized Hingham's Board of Directors.***     If the Debtors elect to transfer the Interests in Reorganized Hingham to Reorganized Linden Ponds in accordance with Section 4.7 of this Plan, the members of Reorganized Hingham's Board of Directors shall be identified in the Plan Supplement.

4.11     ***Officers of Reorganized Linden Ponds.***     The existing officers of Linden Ponds shall continue to be officers of the Reorganized Linden Ponds.  Such officers shall serve in accordance with applicable non-bankruptcy law.

4.12     ***Officers of Reorganized Hingham.***     If the Debtors elect to transfer the Interests in Reorganized Hingham to Reorganized Linden Ponds in accordance with Section 4.7 of this Plan, the existing officers of Hingham shall continue to be officers of Reorganized Hingham.  Such officers shall serve in accordance with applicable non-bankruptcy law.

4.13     ***Employee Benefits.***     Except as otherwise provided herein, on and after the Effective Date, the Reorganized Debtor(s)  may:  (1) honor, in the ordinary course of business, any contracts, agreements, policies, programs and plans for, among other things, compensation, health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance and accidental death and dismemberment insurance for the directors, officers and employees of any of the Debtors who served in such capacity at any time and (2) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time

arising before the Petition Date; provided, however, that the Debtors' or the Reorganized Debtor(s)' performance under any employment agreement will not entitle any person to any benefit or alleged entitlement under any policy, program or plan that has expired or been terminated before the Effective Date, or restore, reinstate or revive any such benefit or alleged entitlement under any such policy, program or plan. Nothing herein shall limit, diminish or otherwise alter the Reorganized Debtor(s)' or the Debtors' defenses, claims, Causes of Action or other rights with respect to any such contracts, agreements, policies, programs and plans.

4.14 ***Vesting of Assets in the Reorganized Debtor(s).*** Except as otherwise provided in this Plan or any agreement, instrument or other document incorporated therein, on the Effective Date, or as soon as practicable thereafter, all property of the Estate of Linden Ponds and all Causes of Action of Linden Ponds (except those released pursuant to the Releases by the Debtors) shall vest in Reorganized Linden Ponds, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens securing the 2011 Bonds or the Exit Facility) and, at the discretion of the Debtors and in accordance with Section 4.7 of this Plan either (i) all property of the Estate of Hingham and all Causes of Action of Hingham (except those released pursuant to the Releases by the Debtors) shall vest in Reorganized Linden Ponds, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens securing the 2011 Bonds or the Exit Facility) or (ii) all Interests in Reorganized Hingham shall be transferred to Reorganized Linden Ponds. On and after the Effective Date, except as otherwise provided in this Plan, the Reorganized Debtor(s) may operate its business or their businesses, as the case may be, and may use, acquire or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

4.15 ***Tender of Series 2007 B and C Bonds and Timing of Distributions.*** To the extent that the (i) the Bank declares a mandatory tender or (ii) the then existing beneficial holders of the Original Series 2007 B Bonds and the Series 2007 C Bonds other than the Bank (the "***Non-Bank Holders***") cause an optional tender, in either case, so as to cause the Bank to become the sole holder of the Original Series 2007 B Bonds and the Series 2007 C Bonds on or prior to the Effective Date, the Bank shall receive the treatment otherwise provided to the Non-Bank Holders pursuant to Section 3.2.3 of this Plan. Notwithstanding anything contained in this Plan to the contrary, if the Bank does not become the sole holder of all of the Original Series 2007 B Bonds and the Series 2007 C Bonds on or prior to the Effective Date, the distributions to be made to the Non-Bank Holders as of the Distribution Record Date pursuant to Section 3.2.3 of this Plan shall not be made on the Effective Date but rather will be made as follows: (i) in the event that the Bank satisfies all of its obligations to the Non-Bank Holders following an optional or mandatory tender of all of the Original Series 2007 B Bonds and the Series 2007 C Bonds in accordance with the 2007 Letter of Credit Agreement and related letter of credit documents, then the relevant 2011 Bonds shall be issued by the Issuer to the Bank upon receipt by the Disbursing Agent of evidence reasonably satisfactory to it that all such Bank obligations have been satisfied; or (ii) in the event that the Bank fails to satisfy all of its obligations to the Non-Bank Holders following an optional or mandatory tender of all of the Original Series 2007 B Bonds and the Series 2007 C Bonds in accordance with the 2007 Letter of Credit Agreement and related letter of credit documents, then the relevant 2011 Bonds shall be issued by the Issuer to the Non-Bank Holders upon receipt by the Disbursing Agent of evidence reasonably satisfactory to it in the event that such failure has occurred; provided that the Bank and the Non-Bank Holders as of the

applicable Subsequent Distribution Record Date (defined below) will be given by the Disbursing Agent at least seven (7) business days prior written notice (a "*Distribution Notice*") of any such distribution of 2011 Bonds and if there is an objection by any party as to the proposed distribution release such party shall be required to seek relief from the Bankruptcy Court prior to the end of such seven (7) business day period and the Disbursing Agent shall not make such distribution until the dispute is determined by the Bankruptcy Court by Final Order.

4.16 **Restructuring Transactions.** On the Effective Date or as soon as reasonably practicable thereafter, the Debtors and the Reorganized Debtor(s) may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate this Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of this Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Persons may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable Persons agree; (3) the filing of appropriate certificates or articles of incorporation or amendments thereof, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (4) all other actions that the applicable Persons determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

4.17 **Corporate Action.** Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized and approved in all respects, including all actions contemplated by this Plan (whether to occur before, on or after the Effective Date). All matters provided for in this Plan involving the corporate structure of the Debtors or the Reorganized Debtor(s), and any corporate action required by the Debtors or the Reorganized Debtor(s) in connection with this Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors or officers of the Debtors or the Reorganized Debtor(s).

On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtor(s), as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, operating agreements and instruments contemplated by this Plan (or necessary or desirable to effect the transactions contemplated by this Plan) in the name of and on behalf of the Debtors or the Reorganized Debtor(s), as the case may be, and any and all other agreements, documents, securities and instruments relating to the foregoing.

4.18 **Section 1146 Exemption from Certain Taxes and Fees.** Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property in contemplation of, in connection with, or pursuant to this Plan, including the transfer of the Facility and the Facility Site from Hingham to Reorganized Linden Ponds or the transfer of the Interests in Reorganized Hingham to Reorganized Linden Ponds (as applicable), shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or

agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; (3) any restructuring transaction authorized by of this Plan; or (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; or (d) assignments executed in connection with any transaction occurring under this Plan.

4.19 ***Preservation of Causes of Action of the Debtors.*** In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to the Releases by the Debtors provided in this Plan), the Reorganized Debtor(s) shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtor(s)' rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor(s) may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor(s). No Person may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtor(s), as applicable, will not pursue any and all available Causes of Action against them. Except with respect to Causes of Action as to which the Debtors or the Reorganized Debtor(s) have released any Person or Person on or before the Effective Date (including pursuant to the Releases by the Debtors or otherwise), the Debtors or the Reorganized Debtor(s), as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in this Plan. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in this Plan or a Bankruptcy Court order, the Reorganized Debtor(s) expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after or as a consequence of the Confirmation or consummation of this Plan. Notwithstanding the foregoing, the Debtors shall be deemed to have released any claims, causes of action or rights arising under sections 510(c), 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

4.20 ***Single Satisfaction of Claims.*** Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claim, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of the Claim. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under this Plan on account of Allowed Claims exceed 100% of the underlying Allowed Claim.

**SECTION 5. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

       5.1    ***Assumption and Rejection of Executory Contracts and Unexpired Leases.*** Except as otherwise provided in this Plan, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with this Plan, each of the Executory Contracts and Unexpired Leases of Linden Ponds and Hingham shall be deemed assumed as of the Effective Date, unless such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the applicable Debtor; (2) expired or terminated pursuant to its own terms before the Effective Date; (3) is the subject of a motion to reject filed on or before the Effective Date; or (4) is identified as an Executory Contract or Unexpired Lease to be rejected pursuant to the Plan Supplement before the Effective Date.

       **Notwithstanding anything contained in this Plan to the contrary, (i) each Residence and Care Agreement, and all obligations arising thereunder, including the repayment of IEDs and all other entrance deposits, will be assumed by Reorganized Linden Ponds, as of the Effective Date, pursuant to this Plan and (ii) the Master Lease, the Working Capital Loan and the Community Loan will be mutually terminated, as of the Effective Date, with no amounts or other damages owing to or due from either Linden Ponds or Hingham; provided however that to the extent that the Interests in Reorganized Hingham are transferred to Reorganized Linden Ponds and the Interests in Hingham are not extinguished, in the sole discretion of Reorganized Linden Ponds and pursuant to Sections 3.2.9 and 4.7 of this Plan, then the Master Lease will either be amended and restated or a new lease for the Facility, will be entered into between Reorganized Hingham and Reorganized Linden Ponds, in each case on terms subject to the prior reasonable approval of the 2011 Trustee.**

       Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in this Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, all assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to this Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to this Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall revest in and be fully enforceable by the Reorganized Debtor(s) in accordance with its terms, except as such terms may have been modified by such order. Notwithstanding anything to the contrary in this Plan, the Debtors or the Reorganized Debtor(s), as applicable, reserve the right to alter, amend, modify or supplement the list of Executory Contracts and Unexpired Leases identified in the Plan Supplement at any time before the Effective Date. After the Effective Date, the Reorganized Debtor(s) shall have the right to terminate, amend or modify any intercompany contracts, leases or other agreements without approval of the Bankruptcy Court.

       5.2    ***Claims Based on Rejection of Executory Contracts or Unexpired Leases.*** All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court within 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; provided, that any such Rejection Claims arising from the rejection of an Unexpired

Lease shall be subject to the cap on rejection damages imposed by Bankruptcy Code section 502(b)(6). Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtors or the Reorganized Debtor(s), the Estates or their property without the need for any objection by the Reorganized Debtor(s) or further notice to, or action, order or approval of the Bankruptcy Court. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as Class 5 General Unsecured Claims against the applicable Debtor and shall be treated in accordance with this Plan.

5.3 ***Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*** Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed under this Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by Cure. If there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of the Reorganized Debtor(s) to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption.

5.4 ***Insurance Policies.*** Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors shall assume (and assign to the Reorganized Debtor(s) if necessary to continue the Insurance Policies in full force) all of the Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption and assignment of each of the Insurance Policies.

5.5 ***Modifications, Amendments, Supplements, Restatements or Other Agreements.*** Unless otherwise provided, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under this Plan.

Modifications, amendments, supplements and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority or amount of any Claims that may arise in connection

therewith, unless such Executory Contract or Unexpired Lease has been previously assumed by the Debtors or either of them.

5.6     ***Reservation of Rights.***     Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtor(s) has or have, as the case may be, any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtor(s), as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

5.7     ***Contracts and Leases Entered Into After the Petition Date.*** Notwithstanding any other provision in this Plan, contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or the Reorganized Debtor(s) liable thereunder in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## SECTION 6.     PROVISIONS GOVERNING DISTRIBUTIONS

6.1     ***Timing and Calculation of Amounts to Be Distributed.***     Except as otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, on the next Distribution Date or as soon as reasonably practicable thereafter), each holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that this Plan provides for Allowed Claims in the applicable Class and in the manner provided herein.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in this Plan.  Except as otherwise provided herein, holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

6.2     ***Disbursing Agent.***     Except as otherwise provided in this Plan, all distributions under this Plan shall be made by the Reorganized Debtor(s) as Disbursing Agent or such other Person designated by the Reorganized Debtor(s) as a Disbursing Agent on the Effective Date.  With respect to any distribution constituting 2011 Bonds, such bonds shall be issued by the Issuer and exchanged through DTC, to the holders of 2007 Bonds of record as of the Distribution Record Date.

6.3     ***Rights and Powers of Disbursing Agent.***     The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby;

(c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of this Plan.

6.4 ***Payments and Distributions on Disputed Claims.*** Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

6.5 ***Special Rules for Distributions to Holders of Disputed Claims.*** Notwithstanding any provision otherwise in this Plan and except as may be agreed to by the Debtors or the Reorganized Debtor(s), on the one hand, and the holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

6.6 ***Delivery of Distributions in General.*** Except as otherwise provided in this Plan, distributions to holders of Allowed Claims shall be made to holders of record as of the Distribution Record Date by the Disbursing Agent. Distributions to holders of Allowed Claims will be made at the address of each such holder as set forth in the Debtors' books and records, except that, in the case of holders of 2007 Bonds, distributions will be made by means of book-entry exchange through the facilities of the DTC in accordance with the customary practices of the DTC, as and to the extent practicable; provided that distributions of Cash made pursuant to Sections 3.2.2 and 3.2.3 hereof to the 2007 Bond Trustee and the Bank shall be made as designated by the 2007 Bond Trustee and the Bank, as applicable. Distributions under this Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment or like legal process, so that each holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in this Plan. None of the Debtors, the Reorganized Debtor(s) and the applicable Disbursing Agent shall incur any liability whatsoever on account of any distributions under this Plan except for gross negligence, willful misconduct or fraud.

6.7 ***Undeliverable Distributions and Unclaimed Property.*** In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such distribution shall be made as soon as practicable after such distribution has become deliverable; provided, however, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six months from the applicable Distribution Date. After such date, all "unclaimed property" or interests in property shall revert to the Reorganized Debtor(s) (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any holder to such property shall be discharged and forever barred.

6.8 ***Withholding and Reporting Requirements.*** In connection with this Plan and all instruments issued in connection therewith, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing

authority, and all distributions under this Plan shall be subject to any such withholding or reporting requirements.

6.9 ***Setoffs.*** Except as set forth herein, the Debtors and the Reorganized Debtor(s) may withhold (but not set off except as set forth below) from the distributions called for under this Plan on account of any Allowed Claim an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtor(s) may hold against the holder of any such Allowed Claim. In the event that any such claims, equity interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtor(s) may hold against the holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim) the amount of any adjudicated or resolved claims, equity interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtor(s) may hold against the holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount. Neither the failure to effect such a setoff nor the allowance of any Claim under this Plan shall constitute a waiver or release by the Debtors or the Reorganized Debtor(s) of any such claims, equity interests, rights and Causes of Action that the Debtors or the Reorganized Debtor(s) may possess against any such holder, except as specifically provided herein. Notwithstanding anything in this Section 6.9 or any other provision of this Plan, the distributions made to holders of Series 2007 A Bond Claims and Series 2007 B/C Bond Claims shall not be subject to setoff.

6.10 ***Insurance Claims.*** No distributions under this Plan shall be made on account of Allowed Claims until the holder of such Allowed Claim has exhausted all remedies with respect to the Debtors' Insurance Policies. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

6.11 ***Applicability of Insurance Policies.*** Except as otherwise provided in this Plan, distributions to holders of Allowed Claims shall be made in accordance with the provisions of any applicable Insurance Policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Person may hold against any other Person, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

6.12 ***Allocation of Distributions Between Principal and Unpaid Interest.*** With the exception of distributions on account of the Series 2007 A Bonds, the Original Series 2007 B Bonds and Series 2007 C Bonds, which shall be treated as provided in Classes 2 and 3, respectively, to the extent that any Claim entitled to a distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for U.S. federal income tax purposes, be allocated on the Debtors' books and records to the principal amount of

the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the accrued but unpaid interest.

## SECTION 7.  PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

7.1  ***Prosecution of Objections to Claims.***  The Debtors (before the Effective Date) or the Reorganized Debtor(s) (on or after the Effective Date), as applicable, shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to Claims as permitted under this Plan.  From and after the Effective Date, the Debtors and the Reorganized Debtor(s) may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  The Debtors reserve all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

7.2  ***Allowance of Claims.***  Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), the Reorganized Debtor(s) after the Effective Date will have and retain any and all rights and defenses held by the Debtors with respect to any Claim as of the Petition Date.  All claims of any Person against any Debtor shall be disallowed unless and until such Person pays, in full, the amount it owes each such Debtor.

7.3  ***Distributions After Allowance.***  On the Distribution Date following the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under this Plan as of the Effective Date, without any interest to be paid on account of such Claim.

7.4  ***Estimation of Claims.***  The Debtors (before the Effective Date) or the Reorganized Debtor(s) (on or after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any party or Person, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors (before the Effective Date) or the Reorganized Debtor(s) (after the Effective Date), may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  All of the objection, estimation, settlement and resolution procedures set forth in this Plan are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, objected to, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

# SECTION 8.    SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

8.1     ***Compromise and Settlement of Claims, Interests and Controversies.***
Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and holders of Claims and Interests and is fair, equitable and reasonable.  In accordance with the provisions of this Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor(s) may compromise and settle Claims against them and Causes of Action against other Persons.

8.2     ***Releases by the Debtors.***  Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in this Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by this Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtors, the Reorganized Debtor(s) and the Estates from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtors, the Reorganized Debtor(s), the Estates or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the 2007 Bonds, the Debtors' Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the Reorganized Debtor(s) or the Issuer, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Debtors' Chapter 11 Cases, the negotiation, formulation or preparation of this Plan, the Disclosure Statement, any Plan Supplement or related agreements, instruments or other documents (collectively, the "***Debtor Released Claims***"), other than Debtor Released Claims against a Released Party arising out of or relating to any act or omission of that party constituting willful misconduct or gross negligence.

8.3     ***Releases by Holders of Claims.***  As of the Effective Date and except as set forth in this Plan or the Plan Supplement, each holder of a Claim or Interest shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Debtors, the Reorganized Debtor(s) and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative Claims assertable on behalf of a Debtor, whether known or

unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Person would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the 2007 Bonds, the Debtors' restructuring, the Debtors' Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the Reorganized Debtor(s), the Issuer, the subject matter of, or the transactions or events giving rise to, any Claim that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation or preparation of this Plan, the Disclosure Statement, any Plan Supplement or related agreements, instruments or other documents (collectively, "***Released Claims***"), other than Released Claims against a Debtor, the Reorganized Debtor(s), or a Released Party arising out of or relating to any act or omission of that party constituting willful misconduct or gross negligence; provided, however that this Plan shall not release the Debtors, the Reorganized Debtor(s) and the Released Parties from any Cause of Action held by a governmental entity existing as of the Effective Date based on (i) the Internal Revenue Code or other domestic state, city, or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city, or municipality, (iii) any criminal laws of the United States or any domestic state, city, or municipality, (iv) the Securities and Exchange Act of 1934 (as now in effect or hereafter amended), the Securities Act of 1933 (as now in effect or hereafter amended), or other securities laws of the United States or any domestic state, city or municipality, (v) the Employee Retirement Income Security Act of 1974, as amended, or (vi) the laws and regulations of the Bureau of Customs and Border Protection of the United States Department of Homeland Security.

8.4     ***Exculpation.***     Except as otherwise specifically provided in this Plan or Plan Supplement, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim, obligation, cause of action or liability for any Exculpated Claim, except for gross negligence or willful misconduct (to the extent such duty is imposed by applicable non-bankruptcy law), but in all respects such Persons shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  The Debtors and the Reorganized Debtor(s) (and each of their respective affiliates, agents, directors, members, officers, employees, advisors and attorneys) have, and upon Confirmation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and applicable non-bankruptcy law with regard to the solicitation and distribution of securities pursuant to this Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.

8.5     ***Discharge of Claims and Termination of Interests.***     Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, the distributions, rights and treatment that are provided in this Plan shall be in full and final satisfaction, settlement, release and discharge, effective as of the Effective Date, of all Claims, Interests and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained

pursuant to this Plan on account of such Claims and Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Interest based upon such Claim, debt, right or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such Claim, debt, right or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted this Plan. Except as otherwise provided herein, any default by the Debtors or their affiliates with respect to any Claim or Interest that existed before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in this Plan.

8.6 *Injunction.* FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN OR THE CONFIRMATION ORDER.

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN THIS PLAN, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THIS PLAN, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO EXCULPATION, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH PERSONS OR THE PROPERTY OR ESTATE OF SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (4) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, SETTLED OR DISCHARGED PURSUANT TO THIS PLAN.

THE RIGHTS AFFORDED IN THIS PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, PROPERTY OR ESTATES.  ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED (EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN).

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS PLAN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL INTERESTS SHALL BE CANCELLED, AND THE DEBTORS' LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS, THE DEBTORS' ESTATES, THE REORGANIZED DEBTOR(S), EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

8.7     ***Term of Injunctions or Stays.***  Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

8.8     ***Protection Against Discriminatory Treatment.***  Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Persons, including Governmental Units, shall not discriminate against the Reorganized Debtor(s) or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor(s)  or another Person with whom the Reorganized Debtor(s) has or have been associated, solely because one of the Debtors has been a debtor under chapter 11, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Cases.

8.9     ***Release of Liens.***  Except as otherwise provided in this Plan, including, but not limited to, Classes 2 and 3 of this Plan, the 2011 Bond Documents, or in any contract,

instrument, release or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtor(s) and its or their successors and assigns. For the avoidance of doubt, except as otherwise provided in this Plan, including Sections 3.2.2 and 3.2.3 of this Plan, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

## SECTION 9.   CONDITIONS PRECEDENT TO CONFIRMATION OF THIS PLAN AND THE EFFECTIVE DATE

9.1   ***Conditions Precedent to Confirmation.***   It shall be a condition to Confirmation of this Plan that each of the following provisions, terms and conditions shall have been satisfied or waived pursuant to the provisions of this Plan.

(a)   The Bankruptcy Court shall have entered an order, which shall not be subject to any stay or subject to an unresolved request for revocation under section 1144 of the Bankruptcy Code, in form and substance reasonably acceptable to the Debtors and the 2007 Bond Trustee, approving the Disclosure Statement with respect to this Plan and the solicitation of votes thereon as being in compliance with section 1125 of the Bankruptcy Code and applicable non-bankruptcy law.

(b)   The Confirmation Order (a) shall be, in form and substance, reasonably acceptable to the Debtors and the 2007 Bond Trustee, (b) shall include a finding by the Bankruptcy Court that the 2011 Bonds to be issued on the Effective Date will be authorized and (c) shall not be subject to any stay or subject to an unresolved request for revocation under section 1144 of the Bankruptcy Code.

(c)   The Confirmation Order shall provide that, in the event that the Bank timely elects, pursuant to section 3.2.3 of this Plan, to receive the Amended Series 2007 B Bonds in variable rate mode, the Bank shall be required to deliver an applicable letter of credit to the 2011 Bond Trustee in accordance with the 2011 Bond Documents on or prior to the Effective Date.

(d)    This Plan and the Plan Supplement, including any schedules, documents, supplements and exhibits thereto shall be, in form and substance, reasonably acceptable to the Debtors and the 2007 Bond Trustee.

**9.2**    ***Conditions Precedent to the Effective Date.***  It shall be a condition to the Effective Date that each of the following provisions, terms and conditions shall have been satisfied or waived pursuant to the provisions of this Plan.

(a)    The Bankruptcy Court shall have entered one or more orders (which may include the Confirmation Order) authorizing the assumption and rejection of Executory Contracts and Unexpired Leases by the Debtors as contemplated herein in form and substance reasonably acceptable to the Debtors and the 2007 Bond Trustee.

(b)    The Confirmation Order, in form and substance reasonably acceptable to the Debtors and the 2007 Bond Trustee, shall have been entered by the Bankruptcy Court and shall not be subject to any stay or subject to an unresolved request for revocation under section 1144 of the Bankruptcy Code.

(c)    All of the schedules, documents, supplements and exhibits to this Plan shall have been filed in form and substance reasonably acceptable to the Debtors and the 2007 Bond Trustee.

(d)    All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.

**9.3**    ***Waiver of Conditions.***  The conditions to confirmation and consummation of this Plan set forth herein may be waived at any time by the Debtors; provided, however, that the Debtors may not waive entry of the Order approving the Disclosure Statement and confirming this Plan.

**9.4**    ***Effect of Failure of Conditions.***  If the consummation of this Plan does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by or Claims against the Debtors; (2) prejudice in any manner the rights of the Debtors, any holders of Claims or any other Person; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any holders or any other Person in any respect.

**SECTION 10.  MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN**

10.1  ***Modification and Amendments.***  Except as otherwise specifically provided herein, the Debtors reserve the right to modify this Plan as to material terms and seek confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in this Plan, the Debtors expressly reserve their rights to alter, amend or modify materially this Plan with respect to any or all Debtors, one or more times, after confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify this Plan or remedy any defect or omission, or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of this Plan.  Any such modification or supplement shall be considered a modification of this Plan and shall be made in accordance with this Plan.

10.2  ***Effect of Confirmation on Modifications.***  Entry of a Confirmation Order shall mean that all modifications or amendments to this Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

10.3  ***Revocation or Withdrawal of this Plan.***  The Debtors reserve the right to, consistent with their fiduciary duties, revoke or withdraw this Plan before the Effective Date.  If the Debtors revoke or withdraw this Plan, or if Confirmation does not occur, then:  (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (3) nothing contained in this Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Person; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor or any other Person.

**SECTION 11.  RETENTION OF JURISDICTION**

11.1  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all matters, arising out of or related to, the Chapter 11 Cases and this Plan including jurisdiction to:

(a)  allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims;

(b)     decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

(c)     resolve any matters related to:     (a) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including rejection Claims, cure Claims pursuant to section 365 of the Bankruptcy Code or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtor(s) amending, modifying or supplementing, after the Effective Date, any Executory Contracts or Unexpired Leases on the list of Executory Contracts and Unexpired Leases to be assumed or rejected; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

(d)     ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(e)     adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(f)     adjudicate, decide or resolve any and all matters related to any Cause of Action;

(g)     adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(h)     enter and enforce any order for the sale of property pursuant to sections 363, 1123 or 1146(a) of the Bankruptcy Code;

(i)     resolve any avoidance or recovery actions under sections 105, 502(d), 542 through 551 and 553 of the Bankruptcy Code;

(j)     resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with the consummation, interpretation or enforcement of this Plan

or any Person's obligations incurred in connection with this Plan;

(k)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of this Plan;

(l)     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the discharge, releases, injunctions, exculpations, indemnifications and other provisions contained in this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

(m)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n)     determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with this Plan or the Disclosure Statement;

(o)     adjudicate any and all disputes arising from or relating to distributions under this Plan;

(p)     consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(q)     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

(r)     hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

(s)     hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(t)     hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the

termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

(u)     enforce all orders previously entered by the Bankruptcy Court;

(v)     hear any other matter not inconsistent with the Bankruptcy Code; and

(w)     enter an order concluding or closing the Chapter 11 Cases.

## SECTION 12.   MISCELLANEOUS PROVISIONS

12.1     ***Immediate Binding Effect.***   Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of this Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtor(s) and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted this Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in this Plan, each Person acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

12.2     ***Additional Documents.***   On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The Debtors or the Reorganized Debtor(s), as applicable, and all holders of Claims receiving distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

12.3     ***Dissolution of Any Committees.***   On the Effective Date, Committees, if any, shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

12.4     ***Reservation of Rights.***   Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of this Plan, any statement or provision contained in this Plan or any action taken or not taken by any Debtor with respect to this Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests before the Effective Date.

12.5     ***Successors and Assigns.***   The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries or guardian, if any, of each Person.

12.6 **_Votes Solicited in Good Faith._** Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and their respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale and purchase of securities offered and sold under this Plan, and, therefore, will have no liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on this Plan or the offer, issuance, sale or purchase of the 2011 Bonds offered under this Plan.

12.7 **_Closing of Chapter 11 Cases._** The Debtors or the Reorganized Debtor(s) shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

12.8 **_Notices_**. All notices or requests in connection with this Plan shall be in writing and given by mail addressed to:

DLA PIPER LLP US
Attn: Thomas R. Califano
George B. South III
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
with copies to:

DLA PIPER LLP US
Attn: Vincent P. Slusher
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 743-4572
Facsimile: (972) 813-6267

WHITEFORD, TAYLOR AND PRESTON, L.L.P.
Attn: Martin T. Fletcher
Stephen F. Fruin
Thomas J. Francella, Jr.
Seven Saint Paul Street
Baltimore, MD 21202
Telephone: (410) 347-8700
Facsimile: (410) 752-7092

with copies to:

McGUIRE, CRADDOCK & STROTHER, P.C.
Attn: J. Mark Chevallier
James G. Rea
3550 Lincoln Plaza
500 N. Akard St.
Dallas, TX 75201
Telephone: (214) 954-6800
Facsimile: (214) 954-6850

All notices and requests to Persons holding any Claim in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in these Chapter 11 Cases. Any such holder of a Claim may designate in writing any other address for purposes of this Section, which designation will be effective upon receipt by the Debtors.

12.9    ***Headings.***   The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the construction of the provisions of this Plan.

12.10   ***Severability***.  If, prior to confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.

12.11   ***Validity and Enforceability***.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.  Should any provision in this Plan be determined by the Bankruptcy Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

12.12   ***Plan Supplement***.  Any exhibits or schedules not filed with this Plan may be contained in the Plan Supplement, if any, and the Debtors hereby reserve the right to file such a Plan Supplement.

12.13   ***Governing Law***.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the Commonwealth of Massachusetts, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan and the restructuring transactions consummated or to be consummated in connection therewith.

12.14 ***Request for Confirmation Pursuant to Bankruptcy Code Sections 1129(a) and 1129(b)***.  The Debtors request entry of a Confirmation Order under Bankruptcy Code section 1129(a) and, to the extent necessary, Bankruptcy Code section 1129(b).


Dated: June 14, 2011                                    Respectfully submitted,


                                                        **Linden Ponds, Inc.**


                                                        By:  /s/ Mary Helen Lorenz
                                                              Name: Mary Helen Lorenz
                                                              Title: Chairman

                                                        **Hingham Campus, LLC**


                                                        By:  /s/ Paul Rundell
                                                              Name: Paul Rundell
                                                              Title: Chief Restructuring Officer