Jeffrey A. Marks
Elliot M. Smith
SQUIRE, SANDERS & DEMPSEY (US) LLP
221 East Fourth Street, Suite 2900
Cincinnati, OH 45202-4095
Phone: (513) 361-1200
Facsimile: (513) 361-1201

Sean J. McCaffity
State Bar No. 24013122
Eric M. Van Horn
State Bar No. 24051465
ROCHELLE MCCULLOUGH, LLP
325 N. St. Paul, Suite 4500
Dallas, TX 75201
Rochelle McCullough, LLP
Phone: (214) 580-2589
Facsimile: (214) 953-0185

COUNSEL FOR SOVEREIGN BANK

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| IN RE: § | |
| § | Case Nos. 11-33913 and 11-33912 |
| LINDEN PONDS, INC. and § | |
| HINGHAM CAMPUS, LLC, § | Chapter 11 |
| § | |
| § | Joint Administration Pending |
| § | |
| Debtors. § | |

**OMNIBUS OBJECTION OF SOVEREIGN BANK TO CASH COLLATERAL MOTION [DKT. NO. 5)] AND DEBTOR IN POSSESSION FINANCING MOTION [DKT. NO. 6]**

Sovereign Bank, for itself and in its capacity as administrative agent, as more fully described below ("Sovereign"), by and through its undersigned counsel, respectfully submits this objection (the "Objection") to (a) the Motion of Debtors for Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection to the Bond Trustee and (III) Scheduling a Final Hearing Thereon [Dkt. No. 5] (the "Cash Collateral Motion"), and (b) the Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to Obtain

Postpetition Financing on a Senior Secured Superpriority Basis Pursuant to 11 U.S.C. §§ 105, 361, 352, 363, and 364; (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b) and (c); and (III) Granting Related Relief [Dkt. No. 6] (the "<u>DIP Motion</u>", together with the Cash Collateral Motion, the "<u>Motions</u>"), each filed by the Debtors on the Petition Date (defined below).[1]

## PRELIMINARY STATEMENT

The Debtors filed on the Petition Date[2] a Plan in which Sovereign would be the sole voter or holder of the ultimate authority to vote the Class 3 claims. Accordingly, if Sovereign were to vote to reject the Plan, the Plan could not be confirmed on a consensual basis. By their agreement to be bound by the Lockup Agreement, however, the Debtors have obligated themselves to file the Plan and pursue its confirmation on a cramdown basis under section 1129(b) of the Bankruptcy Code. While Sovereign received the Plan only approximately 48 hours ago, and continues to analyze it, the Plan appears, for a number of reasons, to fail the "fair and equitable" requirements of the Bankruptcy Code.[3]

Whether the Plan is fair and equitable to Sovereign (and, perhaps, other classes) is, of course, a matter for a later day. Moreover, the Court's consideration of the Lockup Agreement itself has not been yet been scheduled for hearing. What is before the Court now, however – the DIP and Cash Collateral Motions – are heavily tainted by the inappropriate Lockup Agreement and Plan, because both the DIP financing and cash collateral usage arrangements require the Debtors to comply with the Lockup Agreement. Indeed, the Debtors' failure to do so triggers a

---

[1] The Debtors, as they must at this early stage of the Cases, seek approval of the DIP and Cash Collateral Motions on an interim basis pending final hearing on the Motions. Sovereign reserves the right to supplement this objection and/or object on additional grounds at a final hearing.

[2] Capitalized terms are defined below or have the meanings assigned them in the Debtors' first day motions.

[3] Sovereign strongly disagrees with the Debtors' characterization of the negotiations, and breakdown thereof, of a prior version of the Plan. However, it cannot reasonably be disputed that the Plan provided to Sovereign the night before the Petition Date differs materially from the prior version, and adversely so as to its treatment of Sovereign.

default under both the proposed DIP Loan Agreement and the Proposed Interim Cash Collateral Order. The Debtors, therefore, are requesting that the Court, only a few days into the Cases, approve provisions that would pre-determine the course of these Cases and likely set the Debtors on a difficult course to seek to cram down the Plan on a short timeline – failing which the Debtors will be deprived of the liquidity needed to operate the CCRC. This outcome is not permitted by sections 363 or 364 of the Bankruptcy Code and the offensive, case-controlling provisions linking the DIP financing and cash collateral use to the Lockup Agreement must be removed. Sovereign recognizes the Debtors' need to use cash collateral and obtain DIP financing to operate the CCRC for the benefit of creditors and residents and would support customary DIP financing and cash collateral arrangements.

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## FACTUAL BACKGROUND

### A. **The Cases**

2. On June 14, 2011 (the "Petition Date"), the Debtors commenced these jointly-administered chapter 11 cases (the "Cases") by each filing a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code").

3. On the Petition Date, the Debtors filed numerous "first day" requests for relief, including the Cash Collateral Motion and the DIP Motion.

### B. **Linden Ponds' Bond Debt and Sovereign's Relationship with the Debtors**

4. The municipal bond financing component of the Debtors' debt structure is generally described in the Affidavit of Paul Rundell in Support of First Day Motions of Linden

3

Ponds, Inc. and Hingham Campus, LLC ("Rundell Aff.").[4] *See Rundell Aff.* ¶¶ 17 - 20. As part of that financing structure, Sovereign is a short-term secured lender to Linden Ponds as letter of credit provider under the following documents and agreements, among others.

5. Pursuant to the Letter of Credit Agreement by and between Linden Ponds and Sovereign Bank (as Bank and Administrative Agent for Sovereign's participant banks) dated as of July 1, 2007 (the "LOC Agreement"), Sovereign issued Irrevocable Direct Pay Letter of Credit No. 5375 (the "LOC").[5] The LOC, originally issued in the stated amount of $55,768,494.00 and since reduced by partial redemptions to $54,700,150.17, was issued for the account of Linden Ponds and in favor of the trustee (the "Trustee") (now Wells Fargo Bank, N.A.) for the benefit of the holders of the Series 2007 B and 2007 C bonds (together, the "B/C Bonds" and the holders thereof, the "B/C Bondholders"). The LOC was issued to enhance the marketability of the B/C Bonds, which are floating rate bonds with interest rates that are reset on a weekly basis. Although the B/C Bonds have a final maturity date in 2042, B/C Bondholders have the option at any time to tender them for repurchase at par, in which case a remarketing agent would attempt to remarket the bonds to new buyers. Absent such resale, the Trustee would draw on the LOC to pay the tendering bondholders.[6] *See Indenture* §§ 2.04(k), (n), 2.05(k), (n). The LOC does *not* support the fixed rate 2007 Series A Bonds (the "A or Fixed Rate Bonds").

6. The LOC is to expire on July 31, 2012. *See LOC* at 1. Under the LOC Agreement, upon expiration of the LOC, Linden Ponds is obligated to make immediate payment to Sovereign for all outstanding principal, accrued interest and all other amounts owing to

---

[4] The full name of the bonds is "Massachusetts Development Finance Agency Revenue Bonds (Linden Ponds, Inc. Facility), Series 2007 A (Tax-Exempt), Variable Rate Demand Series 2007 B (Tax-Exempt) and Variable Rate Demand Series 2007 C (Taxable)."

[5] True and correct copies of certain documents referenced herein are attached hereto as exhibits. The LOC Agreement is attached as Exhibit A; the LOC is Exhibit B.

4

Sovereign under the LOC Agreement. *LOC Agreement § 5.2*. Accordingly, Sovereign's right to immediate reimbursement in full from Linden Ponds under the LOC and LOC Agreement would arise *no later than* July 31, 2012.

7. This immediate right of reimbursement could also be triggered *earlier than* July 31, 2012 by the Trustee's draw on the LOC, which would not be unexpected given that defaults have occurred under the Indenture and LOC Agreement, including Linden Ponds' failure to reimburse Sovereign as of June 1, 2011 for an interest draw.[7]

8. Linden Ponds' obligations for payment and performance under the LOC Agreement, including its obligation to reimburse Sovereign for amounts drawn under the LOC, are secured by all or substantially all of the Debtors' assets on a parity basis[8] with the A Bonds and B/C Bonds (collectively, the "<u>Bonds</u>") under the Indenture for the Bonds[9] and the Mortgage[10] held by the Trustee on the Debtors' CCRC facility and the underlying land.[11] In addition, the various funds and accounts established under the Indenture are held in trust by the Trustee for the benefit of Sovereign and the holders of the Bonds. *Indenture §§ 4.01, 4.02*.

---

[7] Other examples of circumstances under which the LOC could be drawn prior to expiry include (among others): the B/C Bondholders' optional tender described above; a mandatory tender upon the occurrence of certain events, including (among others) (i) Sovereign's notification that an event of default has occurred under the LOC Agreement, and (ii) the imminent expiration of the LOC; or by a Final Drawing (as defined in the LOC Agreement and LOC) upon (among other events) acceleration under Section 7.02 of the Indenture by reason of an event of default thereunder. *See LOC Agreement § 5.1*.

[8] The Indenture (defined below) provides that the obligations of the Debtor to Sovereign are secured as Parity Obligations along with the A Bonds and the B/C Bonds. This does not mean parity for all payments. Payments are allocated on a parity basis after an Event of Default and after acceleration of all Parity Obligations under the Trust Indenture. Prior to acceleration of all Parity Obligations, section 7.04 of the Trust Indenture provides that funds go first to interest that is then due and payable, then to any principal that is then due and payable in the order of its due date (*e.g.*, after acceleration under the LOC Agreement, all of the principal due to Sovereign would be due and payable) and then interest and principal on Parity Debt as it becomes due and payable. Another example of non-parity payments is section 4.11(c)(iv) of the Indenture, which provides that if construction has been completed or indefinitely suspended by the Debtor, then Initial Entrance Fees in the Special Initial Entrance Fee Account will be used for redemption of B/C Bonds (but not A Bonds).

[9] Trust Indenture (the "<u>Indenture</u>") dated as of July 1, 2007 between the Massachusetts Development Finance Agency and Manufacturers and Traders Trust Company, as Trustee (the "<u>Original Trustee</u>").

[10] Fee and Leasehold Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated as of July 1, 2007, executed by the Debtors in favor of the Original Trustee (the "<u>Mortgage</u>").

[11] *See, e.g., LOC Agreement* § 3.29(a); *Indenture*, definitions of "Corporation's LOC Obligations," "Parity Debt," "Parity Obligations," §5.06; *Mortgage* at 5.

9. In contrast to the short-term nature of Linden Ponds' indebtedness to Sovereign, the Fixed Rate Bonds represent primarily long-term or medium-term debt. Of the original $101,365,000 aggregate principal amount of Fixed Rate Bonds issued, only $5.4 million had short-term maturities (five years or less), while $8.525 million were medium-term (six to twelve years) and $87.44 million were long-term (more than 12 years, with final maturities extending into 2042).

**OBJECTION**

10. The Debtors have filed a string of "first day" filings seeking various forms of relief that will, in effect, dictate and set in stone the course of these Cases on exceedingly short notice to creditors and other parties in interest. These filings are inter-related in many respects and are premised upon the Debtors' compliance with a certain Restructuring, Lockup, Plan Support and Forbearance Agreement, dated June 8, 2011 (the "<u>Lockup Agreement</u>").

11. Under the Lockup Agreement, at the very outset of these Cases, the Debtors would relinquish their ability to pursue or investigate any going concern sale or restructuring avenues or alternative plans of reorganization aside from the one contemplated by the Lockup Agreement (which may well be unconfirmable). The Debtors seek to assume the Lockup Agreement as an executory contract pursuant to section 365(a) of the Bankruptcy Code in the "Motion of the Debtors, Pursuant to 11 U.S.C. § 365(a), for an Order Assuming the Restructuring, Lockup, Plan Support and Forbearance Agreement" [Dkt. No. 9] (the "<u>Assumption Motion</u>").

12. The Assumption Motion and, by extension, the propriety of the Lockup Agreement, are not matters presently before the Court, as the Debtors have not sought to have the Assumption Motion heard on an expedited basis. And yet, as described in detail below, the

Debtors are seeking significant "first day" relief, including emergency requests to access cash collateral, to incur debtor in possession ("DIP") financing, and to obtain conditional approval of the Debtors' disclosure statement [Dkt. No. 7], which are all tied to and premised upon compliance with the Lockup Agreement.

13. The Debtors should not be permitted to bind themselves to such an extent when these Cases are no more than a few days old, nor should they be permitted to turn a blind eye to the possibility that other alternatives may exist to maximize the value of their estates. Accordingly, to the extent that the Cash Collateral Motion or the DIP Motion (or the Debtors' motion for conditional approval of the Disclosure Statement) seek to implement the terms of the Lockup Agreement, or are otherwise premised upon compliance with the Lockup Agreement, such relief is inappropriate and should be denied.

### A. The Cash Collateral and DIP Motions Should be Denied to the Extent They are Premised Upon Compliance with the Lockup Agreement.

14. Sovereign is generally not opposed to the Debtors' obtaining access to cash collateral and necessary DIP financing in order to operate their businesses as they pursue reorganization. Such relief is typical "first day" relief in chapter 11 cases. What is *atypical* about the Debtors' requests, however, is that the relief would come at the expense of their ability to freely explore and pursue sale or restructuring alternatives other than the plan contemplated by the Lockup Agreement.

15. Section 363(c)(2) of the Bankruptcy Code permits the use of cash collateral in the ordinary course of a debtor's business if (a) each entity that has an interest in such cash collateral consents, or (b) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of section 363 of the Bankruptcy Code. In addition, section 364 of the Bankruptcy Code generally permits the incurrence of postpetition DIP financing under

various circumstances. However, a court's discretion in approving such financing is not "unbridled." *In re Ames Department Stores, Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990).

16. "Acknowledging that Congress, in Chapter 11, delicately balanced the hope of debtors to reorganize and the expectations of creditors for payment, the courts have focused their attention on proposed terms [of debtor in possession financing] that would tilt the conduct of the bankruptcy case; *prejudice, at an early stage, the powers and rights that the Bankruptcy Code confers for the benefit of all creditors*; or leverage the Chapter 11 process by preventing motions by parties-in-interest from being decided on their merits." *Id*. (emphasis added). If granted in their current form, the Debtors' requests would do just that: prejudice, at an early stage, the powers and rights that the Bankruptcy Code confers for the benefit of all creditors.

17. According to the DIP Motion, the proposed financing would *require*, among other things:

- the Borrowers not to take any action which is inconsistent with consummation of the Plan (*DIP Motion* at 11);

- the Borrowers to comply with certain "milestones" (which include the filing of the proposed Plan and compliance with the provisions of the Lockup Agreement within the time prescribed in the Lockup Agreement) (*Id*. at 11-13);

- not to revise or otherwise amend the Plan (unless permitted by the Lockup Agreement) without the DIP Lender's consent (*Id*. at 12); and

- not to pursue a plan of reorganization materially different than the Plan (unless permitted by the Lockup Agreement) (*Id*.).

18. Failure to comply with any of these covenants would constitute an event of default under the DIP financing facility. *Id*. at 13. If left uncured, such a default would also

trigger a default under the proposed cash collateral order that would result in the immediate termination of the Debtors' authority to use cash collateral. *Proposed Interim Cash Collateral Order* [Dkt. No. 5-1], ¶ 17(a)(viii). Similarly, the occurrence of any "Agreed Termination Event" under the Lockup Agreement itself would also result in the termination of the Debtors' authority to use cash collateral. *Id.*, ¶ 16(a)(v).

19. The Motions seek, through the back door, to commit the Debtors to the terms of the Lockup Agreement before the Assumption Motion is even considered by the Court. At least to that extent, the relief sought will prejudice Sovereign and other creditors because the Debtors will not be able to freely investigate all restructuring options available to them. The Motions thus violate sections 363 and 364 of the Bankruptcy Code.

20. Further exacerbating the matter, the Plan required by the Lockup Agreement likely cannot be confirmed, except on a cramdown basis under section 1129(b) of the Bankruptcy Code. Yet, that appears not to be possible, because the Plan does not appear to be fair and equitable in its treatment of Sovereign's claim. In general summary, and subject to continuing review and analysis, the Plan includes at least the following material provisions that Sovereign believes may well render it unconfirmable:

(a) The Plan is not fair and equitable because Sovereign's claim is to be repaid over an improperly long period – nine *additional* years from effectiveness of the Plan. Sovereign is a short-term lender whose LOC had an *original* term of only five years, ending July 31, 2012. In addition, if, at the end of the nine-year period, the reorganized debtor failed to pay, Sovereign would have no remedies and there would be no other consequences of nonpayment (such as default rate interest).

(b) The Plan is not fair and equitable and/or unfairly discriminates against Sovereign under section 1129(b) of the Bankruptcy Code because, when compared to the treatment of the claims of holders of Fixed Rate Bonds, Sovereign bears a greatly disproportionate "share of the pain." While the maturities of the Fixed Rate Bonds are nearly kept in place under the Plan, Sovereign's maturity is "stretched" by a factor of 9x. In addition, while the weighted average interest rate under the 2011 Bonds to be issued in exchange for the Fixed Rate Bonds appears to be substantially the same as that under the Fixed Rate Bonds, Sovereign – whose prepetition debt carries an uncapped variable interest rate – would appear to receive either a fixed rate of interest or a *capped* variable rate.

(c) It appears that the treatment of Sovereign's claim does not comply with the deferred payment requirements of section 1129(b)(2)(A)(i). The Indenture under the Plan enables the reorganized debtor to "resize" the 2011 Bonds. This feature would purport to compel Sovereign to agree to a procedure – under certain future conditions – whereby the principal of Sovereign's claim would be reduced to align with the reorganized debtor's debt service capabilities, based on a determination by an expert. Because the Plan purports to require a conditional reduction in the amount to be repaid to Sovereign, it cannot be determined that Sovereign would receive the allowed amount of its secured claim with payments having a present value at least equal to the value of its collateral (whether or not Sovereign makes the section 1111(b) election).

(d) The Plan may not be fair and equitable in that the construction financing is to be secured by a lien that primes the lien securing Sovereign's claim.

## CONCLUSION

As demonstrated above, the Debtors are seeking extraordinary relief. If granted in their current form, the Motions would result in the Debtors' relinquishing their ability to pursue a going concern sale or alternative plans of reorganization at the expense of their estates and creditors. The Debtors' request to commit themselves to the likely non-consensual and seemingly unconfirmable Plan proposed by the Lockup Agreement to the exclusion of all others within days of commencing these Cases is inappropriate and should be rejected. While the Assumption Motion and the propriety of the Lockup Agreement itself is not presently before the Court, the Cash Collateral and DIP Motions in their current forms would effectively require the Debtors' compliance with its terms. For these reasons, the Motions should be denied.

WHEREFORE, Sovereign respectfully requests that the Court deny the Cash Collateral and DIP Motions, and grant such other and further relief as the Court deems just and proper.

DATE: June 16, 2011

Respectfully submitted,

By: /s/ Jeffrey A. Marks
Jeffrey A. Marks
Elliot M. Smith (*pro hac vice* admission pending*)*
SQUIRE, SANDERS & DEMPSEY (US) LLP
221 East Fourth Street, Suite 2900
Cincinnati, OH 45202-4095
Phone: (513) 361-1200
Facsimile: (513) 361-1201
jeffrey.marks@ssd.com

-and-

                                                Sean J. McCaffity
                                                State Bar No. 24013122
                                                Eric M. Van Horn
                                                State Bar No. 24051465
                                                ROCHELLE MCCULLOUGH, LLP
                                                325 N. St. Paul, Suite 4500
                                                Dallas, TX 75201
                                                Rochelle McCullough, LLP
                                                Phone: (214) 580-2589
                                                Facsimile: (214) 953-0185
                                                smccaffity@romclawyers.com
                                                evanhorn@romclawyers.com

                                                COUNSEL FOR SOVEREIGN BANK

## **CERTIFICATE OF SERVICE**

      I certify that on June 16, 2011, a true copy of the foregoing was served via email through the Bankruptcy Court's Electronic Case Filing System.


                                              By: */s/ Jeffrey A. Marks*
                                                    Jeffrey A. Marks

CINCINNATI/89069