U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed June 20, 2011**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case Nos. 11-33912 and 11-33913 |
| | § | |
| **HINGHAM CAMPUS, LLC** and | § | **Chapter 11** |
| **LINDEN PONDS, INC.** | § | |
| | § | |
| Debtors. | § | |

### INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING ON A SENIOR SECURED SUPERPRIORITY BASIS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 364  AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion"), dated June 14, 2011, Hingham Campus, LLC

("Hingham") and Linden Ponds, Inc. ("Linden Ponds" and together with Hingham, the

"Debtors"), each as debtor and debtor in possession, in the above-captioned cases (the "Chapter

11 Cases") pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3),

364(d)(1) and 364(e) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002,

4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

and the Local Bankruptcy Rules for the Northern District of Texas (the "Local Rules"), seeking,

among other things, entry of an interim order (the "Interim Order") and a final order (the "Final Order"):

> (i) authorizing the Debtors to obtain postpetition financing (the "Financing") in the form of a revolving credit facility made available to Linden Ponds in a principal amount of up to $6,000,000 (the "Facility") with superpriority claims and first priority priming liens senior to any prepetition liens, pursuant to sections 105, 361, 362, 363, and 364 of the Bankruptcy Code from Redwood Capital Investments, LLC or its designee (the "DIP Lender");

> (ii) authorizing the Debtors to execute and deliver final documentation substantially in the form of the Senior Secured Super-Priority Debtor-in-Possession Loan Agreement (attached hereto as Exhibit A, the "DIP Credit Agreement")[1] and any other document requested by the DIP Lender in connection with the Financing including, without limitation, security agreements, pledge agreements, mortgages, financing statements, deeds of trust and other security documents (along with the DIP Credit Agreement and all of the forgoing whenever executed, collectively, the "DIP Documents");

> (iii) scheduling a final hearing (the "Final Hearing") pursuant to Bankruptcy Rules 4001(b), (c) and (d); and

> (iv) granting related relief.

This Court having considered the Motion, examined the exhibits attached thereto, and having completed the Interim Hearing (defined below) as provided for under section 364 of the Bankruptcy Code, Bankruptcy Rule 4001(c), and applicable Local Bankruptcy Rules and finding the Debtors provided notice as set forth below to all necessary parties and that no further notice

is required:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

B. **Petition Date**. Commencing on June 14, 2011 (the "Petition Date"), the Debtors each filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court" or this "Court"). The Debtors have continued in the management and operation of their business and property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

C. **Jurisdiction**. This Court has core jurisdiction over the Chapter 11 Cases, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014 and the Local Bankruptcy Rules.

D. **Notice**. Due and appropriate notice of the Motion, the relief requested therein and the Interim Hearing having been served by the Debtors on: (i) the Office of the United States Trustee for the Northern District of Texas; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to the DIP Lender; (iv) counsel to the indenture trustee (the "Bond Trustee") with respect to the bonds issued for the benefit of Linden Ponds by the Massachusetts Development Finance Agency (the "Issuer") in a total amount of $156,365,000 (the "2007 Bonds") pursuant to that certain Trust Indenture between the Issuer and the Bond Trustee dated July 1, 2007 (the "Bond Indenture"); (iv) counsel to Sovereign Bank (the "Bank"), the agent for the providers of certain letters of credit backing certain of the 2007 Bonds, and (v)

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed in the DIP Credit Agreement.

any known lienholders whose liens are being primed under the Financing in compliance with Bankruptcy Rule 4001(b) and (c) and the Local Bankruptcy Rules.

E. **Opportunity to be Heard**. Pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion was held before this Court to consider entry of this Order on or about June 16, 2011.

F. **Disposition**. The Motion is granted on an interim basis in accordance with the terms of this Interim Order. Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled for purposes of this Interim Order.

G. **Lender's Protections**. The DIP Lender is willing to lend money and provide other financial accommodations to the Debtors only on the terms and conditions and with the protections provided herein and in the DIP Documents and are relying on such terms, conditions, and protections in agreeing to lend money and provide financial accommodations to the Debtors hereunder.

H. **Immediate Entry of the Order**. The Debtors have requested that this Interim Order become immediately effective and enforceable upon entry, notwithstanding any provisions that may apply in Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure. The Debtors have demonstrated good cause for the entry of this Interim Order and for this Interim Order to become immediately effective and enforceable upon entry. Among other things, entry of this Order and the immediate effectiveness and enforceability of this Interim Order upon entry will minimize the disruption of the Debtors' business operations and permit the Debtors to satisfy their operating expenses, will increase the possibilities for confirmation of a successful chapter 11 plan for the Debtors, and is

in the best interests of the Debtors, their creditors, and the Debtors' bankruptcy estates. The terms of the borrowings and other financial accommodations authorized hereby are fair and reasonable under the circumstances and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

I.     **Findings Regarding the Financing**.

(i)     Good cause has been shown for the entry of this Interim Order;

(ii)     The Debtors have an immediate need to obtain the Financing, to the extent set forth in the Budget (as defined in the DIP Credit Agreement), to (a) fund the postpetition operating expenses of Linden Ponds incurred in the ordinary course of business and (b) pay certain other costs and expenses of administration of the Chapter 11 Cases including, without limitation, the adequate protection payments required by any orders allowing either Debtor to use the Bond Trustee's cash collateral in these cases (a "Cash Collateral Order"). The access of the Debtors to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors;

(iii)     The Debtors currently are unable to obtain financing on more favorable terms from sources other than the DIP Lender under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set

forth in the DIP Documents without the Debtors granting to the DIP Lender, subject to the Carve Out as provided for herein, the DIP Liens (as defined below) and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Interim Order and in the DIP Documents;

(iv)     The terms of the Financing are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration;

(v)     The Financing has been negotiated in good faith and at arm's length among the Debtors and the DIP Lender, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the Financing and the DIP Documents, including without limitation, all loans pursuant to the DIP Documents, and any other expenses or obligations under the DIP Documents (all of the foregoing collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Lender and its affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Obligations, the DIP Liens (as defined below) and the Superpriority Claims (as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise;

(vi)     Entering into the Financing and the DIP Documents reflects the Debtors' exercise of prudent business judgment consistent with their fiduciary duties; and

(vii)    The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules. Absent granting the relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed.   Consummation of the Financing in accordance with this Interim Order and the DIP Documents is therefore in the best interests of the Debtors' estates consistent with their fiduciary duties.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1.    <u>**Authorization of the Financing and DIP Documents.**</u>

(i)    The Debtors are hereby authorized to execute and enter into the DIP Documents, and the DIP Documents are hereby approved — on an interim basis and to the extent consistent with the terms of the Interim Order and the DIP Documents — and incorporated herein by reference, including, without limitation the execution, delivery and performance of the DIP Credit Agreement, any notes, security and pledge agreements, mortgages contemplated thereby and the other agreements referred to as and in the DIP Documents;

(ii)    The Debtors are hereby authorized to execute, deliver and perform one or more amendments, waivers, consents or other modifications to and under the DIP Documents not inconsistent with the terms of this Interim Order by filing notice of such amendment, waiver consent or other modification with this Court. Following the filing of such notice, any party in interest may contest such amendment, waiver, consent or other modification by filing a motion (an "<u>Amendment Challenge</u>") with the Court with five business days of being provided notice of such amendment, waiver, consent or other modification.

EAST\44967317.2

Subject to the convenience of the Court's calendar, a hearing on any Amendment Challenge shall be held within five business days of the date that the Amendment Challenge is filed. If an Amendment Challenge is not timely filed and served and a hearing is not timely sought, or if the relief sought in the Amendment Challenge is denied, the amendment, waiver, consent or other modification shall become immediately effective.

(iii)     The Debtors are hereby authorized to borrow money pursuant to the DIP Documents, and the Debtors are hereby authorized to incur indebtedness up to an aggregate principal amount of $1,000,000 (the "Interim Amount"), which shall be used as permitted under the DIP Documents and in accordance with the Budget (as defined in the DIP Credit Agreement), and to enter into any and all other and further agreements and arrangements in connection therewith and to pay interest and expenses and incur DIP Obligations all in accordance with this Interim Order and the DIP Documents, including, without limitation, the non-refundable payment to the DIP Lender of the fees referred to in the DIP Documents and reasonable costs and expenses as may be due from time-to-time, including, without limitation, fees and expenses of the professionals retained as provided for in the DIP Documents.

(iv)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees, that may be reasonably required or necessary for

EAST\44967317.2

the Debtors' performance of their obligations under the Financing and under the DIP Documents.

2. **Valid, Binding, Non-Avoidable Obligations**. Upon execution and delivery of the DIP Credit Agreement and the other DIP Documents, such DIP Documents shall constitute and represent valid, binding and non-avoidable obligations of the Debtors enforceable against each Debtor party thereto jointly and severally in accordance with their terms and subject to the terms of this Interim Order for all purposes during the Chapter 11 Cases, any subsequently converted case of either Debtor under chapter 7 of the Bankruptcy Code or after the dismissal of any Case. No obligation, payment, right, transfer or grant of security or lien under the DIP Credit Agreement, the other DIP Documents or this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

3. **Superpriority Claims**. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations approved under this Interim Order shall constitute allowed senior administrative expense claims against each of the Debtors (the "Superpriority Claims") with priority over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a),

507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof (provided, however, that no party shall have recourse to Avoidance Actions (defined below) and proceeds thereof pursuant to this Interim Order), subject only to the payment of the Carve Out to the extent specifically provided for herein.

4.  **DIP Liens**. As security for the DIP Obligations, effective and perfected upon the date of, and through, this Interim Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Lender of, or over, any DIP Collateral (defined below), the DIP Lender shall have a DIP Lien (as defined below) on the DIP Collateral, subject, only in the event of the occurrence and during the continuance of an event of default under the DIP Documents (an "Event of Default"), to the payment of the Carve Out:

(a)  DIP Collateral.  DIP Lender shall have DIP Liens on all assets (tangible, intangible, real, personal and mixed) of the Debtors, whether now owned or hereafter acquired, including, without limitation, management contracts, accounts, inventory, equipment, receivables, capital stock or other ownership interest in subsidiaries, investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks, and other general intangibles, and all products and proceeds thereof, subject only to the Carve Out and all other prepetition perfected and

unavoidable security interests (collectively, all of the foregoing is defined herein as the "DIP Collateral"), but the DIP Collateral shall not include (i) any account held or controlled by the Trustee pursuant to the terms of the Bond Documents with the exception of the Operating Reserve Fund and the Development Fee Account (each as defined and/or used in the Bond Indenture) and (ii) the Debtors' claims and causes of action that arise as of or subsequent to the Petition Date under chapter 5 of the Bankruptcy Code including sections 544, 545, 547 and 548 and any other avoidance actions under the Bankruptcy Code and the proceeds thereof and property received thereby whether by judgment, settlement or otherwise (collectively, "Avoidance Actions")  For the avoidance of doubt, the DIP Collateral shall include all funds in the Operating Reserve Fund and the Development Fee Account but shall not include any other funds or accounts held or controlled by the Bond Trustee; and

(b)  First Priority Priming Lien on Collateral.  The obligations owing to the DIP Lender under the Facility shall be secured by a perfected security interest pursuant to section 364(c)(2), section 364(c)(3) and section 364(d) of the Bankruptcy Code with a valid, binding, continuing, enforceable, fully-perfected, first priority priming lien that is senior to any and all security interests in and liens on the DIP Collateral (which is expressly senior in priority to, without limitation, the Bond Trustee) (collectively, the "DIP Liens").  The DIP Liens shall be senior in priority to any lien, right of setoff or recoupment or any similar right (whether arising by common law, statute or contract) of any party, including, without limitation, the Bond Trustee, regardless of whether such party is in possession of the DIP Collateral or otherwise.  Notwithstanding anything herein, the DIP Liens shall be subject to the Carve Out, but, for the avoidance of doubt,

EAST\44967317.2

payment of the Carve Out shall not reduce the amounts payable to the DIP Lender hereunder or under the DIP Documents.

5.     **Carve Out**.  The Carve Out for certain expenses and professional fees incurred during the pendency of the Chapter 11 Cases (the "Carve Out") means (i) the Debtors' professional fees incurred in the Chapter 11 Cases in the amount not to exceed those fees and expenses incurred through the date that notice of the default under the Facility was received plus $250,000, (ii) other professional fees and expenses incurred in the Chapter 11 Cases in the amount not to exceed those fees and expenses incurred through the date that notice of the default under the Facility was received plus $150,000, (iii) the payment of fees pursuant to 28 U.S.C. § 1930 and (iv) costs and administrative expenses permitted to be incurred by any Chapter 7 trustee under Section 726(b) of the Bankruptcy Code pursuant to an order of the Bankruptcy Court following any conversion of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code  in an amount not to exceed $100,000.

6.     **Protection of DIP Lender's Rights**.

(a)     None of the DIP Collateral shall be subject to any liens, claims and encumbrances, except for those liens, claims and encumbrances expressly permitted under the DIP Documents or this Interim Order, and the liens, claims and encumbrances in favor of the Bond Trustee described in the Bond Indenture, the Bonds, any documents relating to the Bond Indenture or Bonds, or any Cash Collateral Order;

(b)     So long as there exist DIP Obligations which have not been indefeasibly paid, the Bond Trustee shall be prohibited, except as provided herein, from taking any action to exercise remedies against any DIP Collateral.  Notwithstanding the preceding sentence or any other provision of this Interim Order, in the event that (a) the DIP Lender

is not pursuing its remedies against the DIP Collateral or is pursuing remedies in bad faith or for an improper purpose and (b) there is no order of the Court (other than this Order or any order approving the Facility on a final basis) prohibiting the DIP Lender from pursuing its remedies against the DIP Collateral, then on 10 days' written notice from the Bond Trustee to the DIP Lender upon the occurrence of a Termination Event (as defined in any Cash Collateral Order), the Bond Trustee shall be permitted to exercise remedies against DIP Collateral in a manner that is otherwise permitted by and consistent with the Cash Collateral Order, absent an order of this Court to the contrary. Nothing herein shall affect any rights of the Bond Trustee to seek relief from the automatic stay, relief from this order, or to seek to enforce the Cash Collateral Order or such rights that the Bond Trustee may have as a junior creditor under otherwise applicable law. For avoidance of doubt, any amounts recovered by the Bond Trustee from DIP Collateral shall be paid to the DIP Lender until all outstanding DIP Obligations under the Financing have been indefeasibly paid in full.

(c)     On five (5) business days notice to the Debtors, the Bond Trustee, the Bank and the United States Trustee upon the occurrence and continuation of an Event of Default, the automatic stay provisions of section 362 of the Bankruptcy Code will be deemed vacated and modified to the extent necessary to permit the DIP Lender to exercise all rights and remedies under the DIP Documents absent an order of this Court to the contrary. Subject to the payment provisions described below, in no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or otherwise. The delay or failure to exercise rights and remedies under the DIP Documents or this Interim Order by the DIP Lender shall not

constitute a waiver of the DIP Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable DIP Documents. The Debtors waive and shall not be entitled to any right of setoff against the DIP Lender relating to the DIP Obligations; and

(d)     The DIP Lender hereby agrees to accept payment in cash in full of all DIP Obligations at any time prior to a hearing on a Final Order, without prepayment penalty.

7.     **Limitation on Charging Expenses Against Collateral**. So long as, and to the extent that, any DIP Obligations remain outstanding, except to the extent of the Carve Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent of the DIP Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender.

8.     **Reservation of Rights of Adequate Protection Parties**. Under the circumstances, the Court finds that the adequate protection provided in the Cash Collateral Order is reasonable and sufficient to protect the interests of the Bond Trustee.

9.     **Monitoring of DIP Collateral**. In the event the Debtors have ceased to prosecute the confirmation of the Plan (substantially in the form attached to the Restructuring Support Agreement or as filed with the first-day pleadings) in good faith, the DIP Lender reserves the right, in consultation with the Debtors, to retain expert consultants, financial advisors or other professionals at the expense of the Debtors, which consultants and advisors shall be given reasonable access for purposes of monitoring the business of the Debtors and the value of the DIP Collateral.

10.     **Financial Reporting**.  The Debtors shall provide the DIP Lender and the Bond Trustee with financial and other reporting as described in the DIP Documents.

11.     **Perfection of DIP Liens**.

(a)     The Debtors and the DIP Lender are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder; provided however, the Debtors shall perform any act in furtherance thereof if requested by the DIP Lender.  Whether the DIP Lender, in its sole discretion, chooses to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and from the date of entry of this Interim Order forward.  Upon the request of the DIP Lender, without any further consent of any party, the DIP Lender and Debtors are each authorized to take, execute, deliver and file such instruments (in each case without representation or warranty of any kind) to enable the DIP Lender to validate, perfect, preserve and enforce DIP Liens.  By this Interim Order, the DIP Lender shall be deemed to have executed all such agreements, financing statements, instruments and other documents as the may

reasonably be requested to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens;

(b)    A certified copy of this Interim Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording; and

(c)    Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for either Debtor to pledge, grant, sell, assign or otherwise transfer any such leasehold interest, or the proceeds thereof, or other postpetition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting postpetition liens, in such leasehold interest or the proceeds of any assignment and/or sale thereof by either Debtor, in favor of the DIP Lender in accordance with the terms of the DIP Documents or this Interim Order.

12.    **Preservation of Rights Granted Under the Order**.

(a)    No claim or lien having a priority superior to or <u>pari</u> <u>passu</u> with those granted by this Interim Order to the DIP Lender shall be granted or allowed while any portion of the Financing or the commitments thereunder or the DIP Obligations remain outstanding, and the DIP Liens shall not be (i) subject or

junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made pari passu with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise;

(b)     Unless all DIP Obligations shall have indefeasibly been paid in cash in full, the Debtors shall not seek, and others shall not seek, and it shall constitute an Event of Default, if there is, (i) any modification or extension of this Interim Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction or acquiescence, or (ii) an order converting or dismissing any of the Chapter 11 Cases;

(c)     If an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims, priming liens, security interests and replacement security interests granted to the DIP Lender pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations shall have been indefeasibly paid in cash in full and any claims for diminution have been satisfied (and that such Superpriority Claims, priming liens, replacement security interests, adequate protection superpriority claims and adequate protection liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the

purposes of enforcing the claims, liens and security interests referred to in clause (i) above;

(d)     To the extent of applicable law, if any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity, priority or enforceability of any DIP Obligations, DIP Liens and adequate protection liens incurred prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Credit Agreement with respect to any DIP Obligations.  Notwithstanding any such reversal, stay, modification or vacation, DIP Obligations incurred by the Debtors prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and pursuant to the DIP Documents with respect to all uses of DIP Obligations; and

(e)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens and the Superpriority Claims granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of these Cases or by any other act or

omission or (ii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Interim Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, the DIP Liens, the Superpriority Claims and all other rights and remedies of the DIP Lender, and the adequate protection liens and the adequate protection superpriority claims granted by the provisions of this Interim Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in cash in full and any claims for diminution have been satisfied.

13. **Limitation on Use of Financing Proceeds and Collateral**. Notwithstanding anything herein or in any other order by this Court to the contrary, no DIP Collateral, portion of the proceeds of the Financing or part of the Carve Out may be used for any of the following (each, a "DIP Lender Claim") without the prior written consent of the DIP Lender: (a) to object, contest or raise any defense to the validity, perfection, priority, extent or enforceability of any amount due under any DIP Document, or the liens or claims granted under this Interim Order, any DIP Document, (b) to assert any claim or cause of action against the DIP Lender or its respective agents, affiliates, representatives, attorneys or advisors with respect to the DIP Documents and the Financing, (c) except to contest the occurrence or continuation of an Event of Default, to prevent, hinder or otherwise delay the DIP Lender's assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Documents or this Interim Order, (d) to assert or prosecute any action for preferences, fraudulent conveyances, other avoidance

power claims or any other claims, counterclaims or causes of action, objections, contests or defenses against the DIP Lender or its respective affiliates, representatives, attorneys or advisors in connection with matters related to the Financing or the DIP Documents to the extent approved under this Interim Order, or (e) to seek to modify any of the rights granted to the DIP Lender hereunder or under the DIP Documents.

14. **Enforcement of Remedies**.

(a)　Upon an Event of Default or the occurrence of the maturity date under the DIP Documents, the non-contingent DIP Obligations shall become immediately due and owing. Absent an order of this Court to the contrary, in the absence of full payment in cash of all of the DIP Obligations when due, as provided for in this paragraph, the automatic stay is hereby deemed vacated as provided in this Interim Order on the fifth business day after such payment becomes due, and the DIP Lender shall thereafter be permitted to exercise such rights and remedies under such agreements, documents, and applicable law as to all or such part of the DIP Collateral as the DIP Lender shall, in its sole discretion, elect, including, but not limited to, the DIP Lender's right to foreclose on the mortgages and seek to take possession of any cash of the Debtors that is DIP Collateral. Assuming the automatic stay is vacated pursuant to this paragraph, upon such enforcement by the DIP Lender, the Debtors shall cooperate with the DIP Lender in the disposition of the Collateral and shall not otherwise interfere or actively encourage others to interfere with the DIP Lender's enforcement of its rights; and

EAST\44967317.2

(b)     Upon an Event of Default of any of the DIP Obligations, as applicable, the Default Rate set forth in the DIP Documents shall immediately be applicable.

15.     **Effect of Stipulations on Third Parties**.

(a)     Each stipulation, admission and agreement contained in this Interim Order shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors or Debtors as applicable) under all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all DIP Lender Claims as of the date of entry of this Interim Order; and

(b)     Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code) standing or authority to pursue any cause of action belonging to the Debtors or their estates.

16.     **Agent**.     To the extent the DIP Lender appoints any agent (collateral agent, administrative agent or otherwise) in connection with any DIP Document, such agent may be considered (at the election of the DIP Lender) the DIP Lender for the purposes of any account control agreement, as loss payee under the Debtors' insurance policies or as the secured party under the Financing, and such agent shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement).  Each such agent appointed shall serve as agent for purposes of perfecting DIP Lender's security interests and liens on all DIP Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

EAST\44967317.2

17.     **Order Governs**.  In the event of any inconsistency between the provisions of this Interim Order and the DIP Documents, the provisions of this Interim Order shall govern.

18.     **Binding Effect; Successors and Assigns**.     The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Lender, the Bank, the Bond Trustee, any committee appointed in these Cases, and the Debtors and of the respective successors and assigns of the foregoing (including, with respect to the Debtors, any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Lender and its respective successors and assigns, provided, however, that the DIP Lender shall have no obligation to permit the use of DIP Collateral or to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan (whether under the DIP Credit Agreement, a promissory notes or otherwise), or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Lender shall not (i) be deemed to be in control of the operations of the Debtors, (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates or (iii) be deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq.*, as amended, or any similar federal or state statute).

EAST\44967317.2

19. **Effectiveness**. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

20. **Headings**. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

21. **Final Hearing**. The Final Hearing will be held by this Court on **July 15, 2011 at 9:30 a.m.** (prevailing Central Time) to consider entry of a Final Order. The Debtors shall promptly transmit copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court. Any party in interest objecting to the relief sought at the Final Hearing shall file a written objection, which shall be served upon (a) DLA Piper LLP (US), 1251 Avenue of the Americas, New York, NY 10020 (Attn: Thomas R. Califano, Esq. and George B. South, Esq.) and Whiteford, Taylor and Preston, L.L.P., Seven Saint Paul Street Baltimore, Maryland 21202 (Attn.: Martin T. Fletcher, Esq. and Stephen F. Fruin, Esq.), counsel for the Debtors; (b) the Office of the United States Trustee for the Northern District of Texas; (c) the Debtors' 30 largest unsecured creditors on a consolidated basis; (d) counsel to the DIP Lender; (e) Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111 (Attn: William W. Kannel, Esq.), counsel for the Bond Trustee; (f) Squire, Sanders & Dempsey (US) LLP, 221 E. Fourth St., Suite 2900, Cincinnati, Ohio 45202 (Attn: Jeffrey Marks, Esq.), counsel to Sovereign Bank; (g) Venable LLP, Rockefeller Center, 1270 Avenue of

the Americas, New York, NY 10020 (Attn: Carollynn H.G. Callari), counsel to the DIP lender; and (h) any known lienholders whose liens are being primed under the Financing in compliance with Bankruptcy Rule 4001(b) and (c) and the Local Bankruptcy Rules, and shall be filed with the Clerk of the United States Bankruptcy Court, Northern District of Texas, in each case to allow actual receipt by the foregoing no later than July 8, 2011 at 4:00 p.m. (prevailing Central Time).

**###End of Order###**

EAST\44967317.2